116    410
22 SC ¹461

## APPEAL OF J. S. PRICE AND J. B. TOWNSEND.

### APPEAL FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Re-argued March 21, 1887—Decided May 23, 1887.

1. The Orphans' Court has jurisdiction, in the audit of the account of a guardian, to pass upon a claim made by an attorney for professional services rendered at the request of the guardian for the benefit of the ward's estate, though such services did not relate to the fund embraced in the account.
2. The guardian should not be held to a mere personal liability, and counsel should not be limited to the personal liability of the guardian, for professional services rendered for the benefit of the ward's estate at the request of the guardian: *per* MR. JUSTICE GREEN.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.; CLARK, J., absent.

No. 23 January Term 1886, Supt. Ct.; court below, 279 April Term 1880, O. C.

J. Sergeant Price and Joseph B. Townsend, members of the Philadelphia bar, were employed by Lewis A. Scott, Esq., guardian of Lewis A. Scott, Jr., and his two brothers, minors, to recover in ejectment real estate in the city of Philadelphia, valued by the city assessor at $151,800. The suit was successful; see proceedings in the court below: Scott v. Wistar, 13 W. N. 295, in this court; Wistar v. Scott, 105 Penn. St. 200. The guardian had paid in part for the services of his counsel, but they claimed, as additional compensation, $700 from the estate of each plaintiff in said suit.

The ward, Lewis A. Scott, Jr., coming of age, his guardian settled a final account embracing personal estate alone, showing a cash balance due the ward of $222.39 and securities of the value of $2,700. Upon the adjudication of the account by the Orphans' Court, Mr. Price and Mr. Townsend presented their claim against the property of the ward in the guardian's hands as shown by the said account, and offered to prove—

(1) That they were employed by the guardian during his

ward's minority, in the name and right of the ward, to conduct the litigation referred to, and did conduct it to a successful termination. (2) That the guardian had offered to pay them $300 in full of their claim. (3) That the amount charged for their services was reasonable and fairly earned.

The auditing judge, *Hanna, P. J.*, disallowed the said claim, and, exceptions being filed, after argument dismissed the exceptions and confirmed the adjudication, filing the following opinion:

The single question presented is, whether the Orphans' Court has jurisdiction to determine a contested claim against a guardian, and, through him, the minor's estate. Under § 10 of the act of March 29, 1832, P. L. 192, the account of a guardian should include the "management of the minor's property under his care," and is a settlement only between himself and his ward. The latter, if living at the time of settlement, is, other than the guardian, alone interested.

It follows, therefore, that matters foreign to transactions between the guardian and ward, during the minority, have no place in the adjustment and settlement of the account: Crowell's Appeal, 2 W. 295; Portuondo's Est., 14 Phila. 271. This being the case, should claims be presented against the minor's estate, or against the guardian personally? Unless they be admitted by the latter or by the late minor to be correct, and payable out of his estate coming to him from his late guardian, the Orphans' Court has no jurisdiction to determine their validity, or the liability either of the guardian or the late minor, but must remit the claimants to their remedy at law. And the parties sought to be made liable have a right to a trial by jury, and, in case of judgment, to the exemption allowed by law to every debtor: Shore's Est., 10 W. N. 572.

The exceptions are dismissed, without prejudice to claimants' right to proceed at common law, and the adjudication is confirmed.

In this ruling, *Penrose, J.*, concurred, but *Ashman, J.*, filed a dissenting opinion. Mr. Price and Mr. Townsend then took this appeal, assigning the decree and confirmation as error.

*Mr. George Junkin*, for the appellants:

1. A guardian is an officer of the court, to do what the

court cannot do, to take charge of the minor's estate. He is to account to the court for the property committed to his charge. It is then the duty of the court to see that all who have dealt with the guardian, on the faith of his being such officer, should be paid out of that property. The expenses of the guardian's administration are all within the jurisdiction of the court, and this jurisdiction cannot depend upon the whim of the guardian. The decided cases are consistent with these views: Crowell's App., 2 W. 296; Lorenz's App., 69 Penn. St. 350; Shore's Est., 10 W. N. 572; Portuondo's Est., 14 Phila. 271.

2. The appellants do not claim as creditors of the minor. They are creditors of the guardian, the officer of the court: McKelvy's App., 108 Penn. St 615; Woodward's App., 38 Idem 322; Farney's App., 12 W. N. 82. .

3. It is not only the privilege but the duty of a guardian to employ counsel to protect the interests of his ward: Chaplin v. Moore, 7 Mon. 150; McDowell v. Caldwell, 2 McCord 56 (16 Amer. Dec. 635); Buist's Est., 8 Phila. 190; McNickle v. Henry, 9 Idem 244; McElhenny's App., 46 Penn. St. 347; Manderson's App., 113 Idem 631.

4. The Orphans' Court is a court of chancery within its jurisdiction, and has jurisdiction in the premises: Horner v. Hasbrouck, 41 Penn. St. 169; § 5, Act of March 29, 1832, P. L. 191; 1 Bl. Com. 462; Shollenberger's App., 21 Penn. St. 337; Black's Exrs. v. Black's Exrs., 34 Idem 354; Postlethwaite's App., 68 Idem 477; Daly v. Maitland, 88 Idem 384.

*Mr. J. Howard Glendell* (with him *Mr. John M. Scott*), for the appellee:

1. Under § 10 of the act of March 29, 1832, the account of a guardian should include the "management of the minor's property under his care," and is a settlement only between himself and his ward; therefore, matters foreign to transactions between the guardian and his ward, during the minority, have no place in the adjustment and settlement of the account: Crowell's App., 2 W. 295; Portuondo's Est., 14 Phila. 271; Shore's Est., 10 W. N. 572; Mohney v. Evans, 51 Penn. St. 80; Carl v. Wonder, 5 W. 97.

2. The proper forum of the appellants is a court of common

law, where they may recover on a *quantum meruit;* the question of the validity and amount of the claim is one purely of fact and should be submitted to a jury: North Penn. Coal Co. v. Snowden, 42 Penn. St. 488; Norris's App., 64 Idem 275; Tillmes v. Marsh, 67 Idem 511; Bechal v. Rank, 5 W. 140; Trimble's App., 6 W. 133; Gravenstine's App., 2 Penny. 61.

OPINION, MR. JUSTICE GREEN:

The only question in this cause is a question of jurisdiction. The merits of the appellants' claim are not before us, because their offer of proof in support of it was rejected by the auditing judge, and this action was sustained by a majority of the learned court below. We find ourselves unable to assent to the conclusion reached, and for that reason the decree must be reversed in order that the claim of the appellants may be heard and decided. The evidence was rejected because it was held that the Orphans' Court had no power to entertain the claim, no jurisdiction to hear and determine it. As we understand the facts, the appellants, who are eminent counsel of the city of Philadelphia, had been employed by the guardian of a minor to render professional services on behalf of the minor in an attempt to recover certain real estate claimed for the ward. A retaining fee and some other fees were paid to the appellants, the services were rendered and the estate was recovered. A bill for final compensation having been presented to the guardian, he refused to pay it and thereupon, on the audit of his account, the counsel presented their claim to the auditing judge who rejected the proof offered in its support, on the ground of want of jurisdiction.

We must regard the claim, therefore, as a claim against the guardian in his official capacity, upon a contract made with him as such, for necessary services actually rendered, under and upon the faith of the contract, on behalf of the ward and concerning property claimed for the ward; the ward's title being denied and resisted in the courts and the services resulting successfully in the recovery of the property. For these services the counsel were partially compensated by the guardian, and the claim is to recover from the guardian in his official capacity the remainder of the compensation alleged to be due.

The foregoing limitations distinguish the case entirely from the cases cited in the opinion of the court below, and in which it is held, that a creditor of the minor cannot intervene between the guardian and the ward in the settlement of the guardian's accounts. This is a claim against the guardian founded upon what appears to be a perfectly legitimate contract with the guardian himself, and relating entirely to the estate of the ward. It is not only the right but the plain duty of guardians to seek for and recover the property of their wards, when held adversely, and to employ counsel for that purpose when necessary. And in our opinion it cannot be questioned that the estate of the ward is liable to make compensation for such service. It is equally clear that the guardian should not be held to a mere personal individual liability in such circumstances, and that the counsel should not be limited to the personal liability of the guardian in recovering their just compensation. That liability may be of no value whatever, but even if it were it cannot be considered as in any manner legally or equitably pledged for the service in question. It follows that if the claim in question is a proper one it is payable out of the ward's estate. That estate is subject to the control of the Orphans' Court and upon the settlement of the account of the guardian with whom the contract was made, and who has part of the ward's estate in his hands, the Orphans' Court having also control of the account, the claim in question can be most fully, thoroughly and conveniently heard and determined by that court.

It is admitted that if the guardian had paid for the services and claimed credit for the payment of them in his account, the Orphans' Court would have had jurisdiction to determine the claim. It cannot be that the jurisdiction of the court depends upon the giving or withholding consent to the payment by the guardian. We are aware of no legal reason for holding that the Orphans' Court does not have jurisdiction to consider and determine claims against the estates of minors under their control. On the contrary, it seems to us that court is eminently the proper one for such purposes. Certainly, claims for necessaries furnished to the guardian for the support of the ward are valid claims against the estate of the ward in the hands of the guardian, and the right to recover them from

that estate cannot depend upon whether the guardian consents or refuses to pay them. It is no answer to say there is a right of common law action against the guardian individually, or the minor individually, to recover such claims. If there is a right of recovery against the estate of the ward it ought to be, and in our judgment it is, perfectly competent to pursue it in the court which has control over the person and estate of the minor, and the person and accounts of the guardian. The idea that a jury trial should be had, or may be needed, has neither relevancy nor merit. In point of fact there is little or no necessity for a jury in determining the compensation due to counsel for their services in such a case, as we held in McKelvey's Appeal, 108 Penn. St. 615, but even if there were, the power of the Orphans' Court to grant issues for the trial of disputed facts is most ample and we must assume that it will be exercised in all proper cases. But even the absence of a jury trial will not defeat a jurisdiction which otherwise exists. In Carl v. Wonder, 5 W. 97, we held that where a guardian had paid fees to counsel for services to the estate of the ward, he had no right of action against the ward at common law to recover back the money but must proceed in the Orphans' Court by a settlement of his account in order to have the claim allowed.

In Furney's Appeal, 12 W. N. 82, we allowed a recovery for fees adversely claimed by counsel as compensation for services in relation to the ward's real estate, and the recovery was had upon a settlement of the guardian's account. The jurisdiction was not questioned but the decision was placed upon a ground which would have given it in that case as it does in this.

By the act of 29th March, 1832, § 5, P. L. 191, it is provided that " the Orphans' Court of each county shall have the care of the persons of minors resident within such county and of their estates." And by the act of 16th June, 1836, § 19, P. L. 792, it is provided that " the jurisdiction of the several Orphans' Courts shall extend to, and embrace

" 1. The appointment, control, removal and discharge of the guardians of minors and the settlement of their accounts.''

It seems to us that these acts contain all the elements of a jurisdiction which will enable Orphans' Courts to take cognizance of, and decide, claims like the present where the services

were rendered to the ward's estate upon a contract, apparently lawful, made with the guardian, and a part of the estate of the ward is in the hands of the guardian, whether it is the part recovered by the services in question or not. There is no legal or logical necessity apparent to us, that the estate recovered shall be embraced in the account of the guardian in order to give jurisdiction to the Orphans' Court to hear and determine a question of compensation for professional services rendered in recovering that estate. If the jurisdiction be conceded at all, it certainly exists and may be availed of, whether the particular assets of the ward which were recovered by the services in question are represented in the account filed or not. It would be a highly illogical proposition, as it seems to us, to say that the jurisdiction which is only the lawful right of the court to hear and determine the question, should depend upon the possession of, and accounting for, certain particular assets. Suppose the particular assets were not recovered and the services were necessary and were faithfully and skilfully rendered, should there then be no right of compensation though there be an abundance of other assets? Surely not. If such were the law, and the right to compensation depended alone upon success, the estates of minors might be seriously imperilled for want of the professional assistance and protection which it is the business of Orphans' Courts and guardians to provide for them.

Nor is there any force in the argument drawn from analogy to the case of administrators and executors. These are trustees merely for collection and distribution, having no power to bind the estates of their decedents by contracts made by themselves. But guardians are trustees for custody and management, and necessarily must and do have power to make many kinds of contracts. The very nature of their function proves this. The minors must have food and clothing and shelter, medical attendance in sickness and legal services for the protection of their estates. If they have houses and lands, these must be let to tenants and the buildings must be kept in repair and insured against fire which can only be done by contracts. If they have money it must be invested and this can only be done by contracts of loan. If they have securities these may require to be changed and this can only be done

by an exercise of contracting power. But if contracts are to be made by the guardian with reference to the ward's estate, he must necessarily have power to bind the estate, and such power will be futile unless contracting parties have access to the estate through the courts. But the only court having control of the estates of minors with us is the Orphans' Court, and hence that court must be regarded as clothed with all the necessary jurisdiction to hear and determine claims against such estates upon contracts made with guardians. In McElhenny's Appeal, 46 Penn. St. 347, we held that " a guardian unlike an administrator is a trustee for custody and management, not for mere collection and distribution," and therefore his right to compensation for his own services must be measured by a different standard from that by which the compensation of an administrator is determined. In Manderson's Appeal, 113 Penn. St. 631, we held that a claim for counsel fees for services rendered to a prior trustee of a spendthrift-son trust who had absconded with the trust funds in his hands, should be paid by his successor in the trust, out of funds received by him subsequently to the default of the trustee who employed the counsel. Mr. Justice STERRETT in delivering the opinion of this court said : " It was the trust estate and not the trustee individually that was benefitted by appellant's well-directed and successful services; and hence it is both reasonable and just that they should be paid out of the trust fund." We treated the claim as a part of the expenses necessarily incurred in administering the trust and allowable on that principle.

And so, in the present case, the claim of the appellants is eminently of this character. Their professional services were given to secure, and actually did secure, a large part of the trust estate. Had it been money in the hands of the guardian and embraced in his account, it could not have been questioned under our decisions that the claim should have been allowed: Furney's Appeal and Manderson's Appeal, *supra*. But it was land not converted into money, and of course was not represented in the account filed by the guardian. It was and is, however, a part of the very trust estate belonging to the ward, and in the possession and control of the same guardian who holds the present fund and who contracted with the appellants for their services. Upon contracts made

with an ordinary trustee for custody and management, it cannot be doubted that the appropriate court of Common Pleas or Orphans' Court having jurisdiction of the accounts of the trustee has power to hear and determine claims against the trust estate. So also in the case of contracts made with the committee of a lunatic, respecting the person or estate of the lunatic, it is equally clear, that claims founded upon such contracts against the estate of the lunatic in the hands of the committee, can be heard and decided by the court having jurisdiction of the accounts of the committee. And yet no statute confers any special jurisdiction for such purposes upon any court, in the case either of trustees or committees of lunatics. We have even gone so far as to deny the right of a claimant to a common law action to recover against the committee of a lunatic for services rendered in the proceeding. Thus in the case of Wier v. Myers, 34 Penn. St. 377, we held that an action at law will not lie against the committee of a lunatic to recover compensation for professional services rendered by the plaintiff as an attorney in conducting the proceedings in lunacy. The court that has the final settlement of the committee's accounts has the exclusive control of such expenditures. But the estate in the hands of the committee is liable for such services.

It seems to us that upon plain principles the jurisdiction to entertain claims for professional services rendered by attorneys to the estates of minors upon contracts with their guardians, ought to reside in the courts which have control of the accounts of the guardians. No personal liability of the guardian is intended in such cases, and where the contracts are within the line of their duty and their power no personal liability exists. The liability really incurred is official only, and if contested should be inquired of and determined by the court having control of the estate of the ward and of the accounts of the guardian.

> The decree of the court below is reversed and the record is remitted for further proceedings, at the cost of the appellees.