# CHARLESTON.

### CRIM *v.* ENGLAND *et al.*

Submitted February 1, 1899—Decided April 22, 1899.

1. EXECUTORS—*Liability of Sureties—Decree—Evidence.*

    A decree against an executor, finding a sum of money in his hands from assets, is *prima facie* evidence against the sureties in his bond. (p. 483).

2. EXECUTORS—*Decree—Evidence.*

    A judgment or decree against an executor in favor of a creditor, payable out of assets, is conclusive evidence upon the exector and his sureties as to the existence and justness of the demand. (p. 483).

3. EXECUTORS—*Attorney's Fees.*

    Reasonable fees of counsel may be paid by an executor or administrator out of the assets, as part of the expense of administration, and if not paid by him, are a lawful charge on the assets. (p. 483).

4. EXECUTORS—*Attorney's Fees—Liability of Sureties.*

    If a court, in a suit administering assets of a decedent, allow an attorney's fees for services rendered the executor or administrator in the administration, and direct payment by him out of a balance of assets found by the decree to be in his hands, it is a valid demand against the sureties in his bond. (p. 485).

5. EXECUTORS—*Discharge—Notes.*

    If there is a valid demand binding assets of a decedent, it is not discharged merely by reason of the fact that the executor gives a note therefor signed by him, with the addition to his name of the words, "Executor of——, Deceased." (p. 484).

3. PARENT AND CHILD—*Gift of Land Certainty.*

    If a father give a son an undivided moiety of a specific tract of land, saying it is to be the west end of the tract, the gift is sufficiently certain and definite, as to the land given, to be enforced. (p. 487).

7. GIFT OF LAND—*Consideration—Possession—Improvements.*

    In case of an oral gift of land on meritorious consideration, mere delivery of possession will not render the gift enforceable; but if, in faith of the gift, the donee make valuable improvements, it will be enforced in equity by a conveyance. (p. 487).

8.  GIFT OF LAND—*Liability for Debt.*
    A valid oral gift of land, made before the donor incurs a debt. Land not liable therefor.  (p. 487).

Appeal from Circuit Court, Barbour County.

Suit by J. N. B. Crim against Jasper England and others. Decree for defendants, and plaintiff appeals.

*Decree reversed, and bill dismissed in part as to England.*

J. HOP WOODS, for appellant.

DAYTON & DAYTON, F. O. BLUE, and W. B. KITTLE, for appellees.

BRANNON, JUDGE:

In 1875, James W. Trahern and John F. Trahern executed a bond, as administrators of James Trahern, deceased in which John England and William Nestor were sureties.  In a chancery suit brought in 1876, in the circuit court of Barbour County, by Francis White, executor, etc., against said administrators and the heirs of James Trahern, to administer his estate for payment of his debts, a decree was pronounced, in 1880, finding the administrators in arrear in a certain sum for assets in their hands, and directing the payment out of the same of two debts,—one to Bradford of five hundred and thirty-one dollars and fifty cents, and one to Brown of seventy-seven dollars and forty-three cents,—which debts were later assigned to Joseph N. B. Crim.  John England died leaving land, part of which he devised to his sons, Jasper and James England, and part he directed to be sold, and its proceeds divided among certain of his heirs.  William Nestor died leaving land, which descended to his heirs.  In February, 1886, Crim brought the chancery suit now in hand for several purposes, particularly to subject to his debts the land devised to Jasper and James England by their father, John, and the land left by William Nestor in the hands of his heirs, and to subject some purchase money in the hands of Lawless, a party who purchased land devised by England to be sold, and to make the England legatees, who got money from such land, refund the same for the payment of his debts.  Jasper England defended, but James England and the Nestor heirs did not.  The court dismissed the bill, and Crim appealed.

Jasper England's answer sets up, in defense of his land, that the demands of Crim never were debts binding on the estate of James Trahern, and therefore not chargeable on its assets in the hands of James W. Trahern and John F. Trahern, his administrators, and therefore could not bind England as a surety in the bond of the administrators. It also sets up the further defense that his father, John England, in his lifetime, gave him the tract of land sought to be subjected by Crim, and that, under the promise of the father that he should have it, he took possession of and improved it, and resided upon it, claiming it adversely to the world; so that it is, in no event, liable to Crim's demand.

The first defense made by Jasper England presents the question of the effect of the decree in the White suit in favor of Bradford and Brown for their debts, now owned by Crim, and declaring that they were chargeable upon the personal assets of James Trahern, deceased, and finding in the hands of his administrators a sum sufficient to pay those debts, and decreeing that out of that fund his administrators should pay those debts as primary charges upon that fund. John England, the surety in the bond, not being a party to that suit, but the administrators being parties, what was the force of that decree upon England, as a surety in the bond, to show that sufficient assets were in the hands of the administrators to pay those debts, and to show that those debts were valid debts binding those assets, and therefore should have been paid by the administrators? Does that decree bind England? If it does, his lands are chargeable with the debts. The general law is that a judgment against an administrator or executor for a debt, or a decree for a balance in his hands, is conclusive upon the sureties in his bond, though they are not parties. The Supreme Court held that "sureties in an administration bond are bound by a decree against their administrator finding assets in his hands, and nonpayment of them over, to the same extent to which the administrator himself is bound. They cannot attack collaterally a decree against him on such a subject." *Stovall* v. *Banks*, 10 Wall. 583. See 2 Brandt, Sur. section 580; 2 Black, Judgm. section 589; 1 Freem, Judgm. section 180. But in the Virginias it is not conclusive, but only *prima facie*. *State* v. *Nutter*, 44

W. Va. 385, (30 S. E. 67); 1 Lomax, Ex'rs, 331; *Hobson* v. *Yancey,* 2 Grat. 73; *Craddock* v. *Turner,* 6 Leigh, 116. I am of opinion that the finding of assets in the administrator's hands is not conclusive, but *prima facie,* because of a peculiar Virginia statute found in Code 1891, c. 85, s. 24, that no executor or surety shall be chargeable beyond assets by reason of any omission or mistake in pleading, and may offer any defense admissible in an action against the executor suggesting a devastavit. I think it is that which makes the difference between our law and the general rule. But that does not touch the point of how far a judgment or decree establishing a creditor's debt against the executor is conclusive as to its existence, amount, and justness. Here it is conclusive, not *prima facie,* Per Judge Green in *Davis* v. *Rowe,* 2 Rand. 416; 2 Lomax, Ex'rs, side page 458, top page 721. This is under the general principle stated in *Bensimer* v. *Bell,* 35 W. Va. 15, (12 S. E. 1078, Syl., point 5), that "a judgment in favor of A. against B. for a debt is conclusive, not only between the parties, but even as to strangers, to establish the existence and amount of the liability, and strangers can only impeach for fraud or collusion." *Morris* v. *Murphy,* (Ga.) 22 S. E. 635. But let us examine. The decree in the White case declares that the debts in question had grown out of the administration of Trahern's estate, and were primary charges on the personal assets. Depositions show that Bradford and Brown were attorneys for the administrators in their administration. Reasonable fees paid counsel are always allowed as credits to the administrators. Schouler, Ex're, section 544; *Lindsay* v. *Howerton,* 2 Hen. & M. 57. If the administrator may lawfully pay counsel fees, it follows that services rendered, and not paid, but which he wrongfully neglected to pay, may be decreed to be paid out of assets found in his hands unexpended.

Counsel for England say that John England was dead when the debts arose, meaning when the administrators gave their notes therefor. I see no force in this fact. When he signed the bond, he undertook for the administration of the assets by his principals, whether he was dead or alive, during the administration; and, if Bradford and Brown became entitled to payment out of the assets during the progress of administration, how can it matter whether

the surety was dead or alive at the time when the service creating a charge on such assets was performed? This argument overlooks the fact that counsel fees are, under our law, a part of the very charge of administration, and as binding on the estate as a debt created by the decedent in life,—more so. It is contended that, as the administrators gave Bradford and Brown notes for this compensation, signed by them, with the addition after their names of "Administrators of James Trahern, Deceased," these words are mere *descriptio personarum*, and have no effect to change the legal liability thereon, and they are the individual notes of the administrators personally, and not the notes of the estate. As notes they are the notes of those parties. Of their intrinsic force, *per se*, they bind them only, as the words in notes signed, "James Bennett, Agent for Lewis County," were held to be notes of Bennett, not binding on the county. *Exchange* v. *Lewis Co.*, 28 W. Va. 273. See *Rand* v. *Hale*, 3 W. Va. 495; *Early* v. *Wilkinson*, 9 Grat. 71. But that was a debt which Lewis County could not contract. If an action at law were brought on such notes, it would be proper to sue the signers as individuals, ignoring those words, or, if used, they would be rejected as mere description of the signers. The notes bound the signers personally. But the question is, did those notes debar Bradford and Brown from looking to the estate for services rendered it? The taking of a note for another note or an account does not operate as discharge, unless so expressly agreed, but action on the old note or account may still be maintained. The taking of the note of a person not before bound is *prima facie*—only *prima facie*—payment; but these parties, having assets payable to these debts, were personally bound, and the very fact that they added the words, "Administrators of James Trahern," indicates that there was no intention to discharge the estate. There may have been other evidence before the commissioner in the White case touching these services. There is the decree, and it is proven in this case that they were rendered. Therefore, treating that decree as but *prima facie*, and I doubt whether we should not say it was conclusive, we see nothing to repel its *prima facie* showing. We are cited to Schouler, Ex'rs, section 256, saying that the executor or administrator cannot create a debt

against the estate. Clearly he cannot make a contract on a consideration new and independent of the decedent, as only his obligations bind his estate. But how as to necessary expenditures or liability for administration? The same section says, as an exception, the executor may on principle, contract for all necessary matters relating to the estate, and "the immediate and particular result is that, a sufficiency of assets being presumed as an element of the undertaking, he contracts, as upon his personal responsibility, to keep good that sufficiency." He is personally liable for the contract, but is allowed to pay out of the assets, and, the contract being lawful, if he does not so apply them the party can charge him individually. Say that he is personally liable. So he is, for the fund found in his hands applicable thereto, and, as that fund came from assets, the sureties undertook that he would apply that fund properly. How does the fact that he is also individually liable change the case? 2 Lomax, Ex'rs, side pages 458, 459; Davis v. Rowe, 2 Rand, 416.

I come now to the question whether the land claimed by Jasper England is liable to these debts. I confess that, up to this point in this opinion, I have written under the impression that it was liable, but a re-examination has changed that impression. My trouble was uncertainty as to the land claimed by Jasper to have been given him by his father; for, both as to sales and to gifts, there must be legal certainty in the contract of sale or gift, both with reference to the terms of sale and the description of the property. Mathews v. Jarrett, 20 W. Va. 415; Gallagher v. Gallagher, 31 W. Va. 9, (5 S. E. 297). In the former case the court held as too uncertain in description for enforcement a sale of "ten acres of land on the west side of the branch on the Keeny place, where Mathews now resides." In Westfall v. Cottrills, 24 W. Va. 763, a sale of "40 acres off the Spring Fork and of my tract of 147 acres on Beech Fork" was held too indefinite. These two cases hold that "where neither the contract nor proof identifies the tract or boundaries of the land, nor refers to anything by which it may be identified with reasonable certainty," it will not be executed in equity. In the present case, John England, owning a tract of land said to contain two hundred and one acres, in 1866 gave Jasper, as he

claims, one hundred and five acres, being half, known as the "west" or "south" end. Jasper's evidence is incompetent in behalf of himself. *Smith* v. *Turley*, 32 W. Va. 14, (9 S. E. 46). But, if used against him, I thought his own statement showed uncertainty in description of the land; for he says his father gave him a certain tract of thirty-four acres, acquired by his father from Nicola, and "enough off of the other end to make us even,—me and my brother James, 105 acres apiece. The thirty-four acres was already identified by metes and bounds, and that I was to take the land adjoining that of my father's farm to make my equal part." I thought this uncertain. What part of the residue outside of the thirty-four acres? Where are the lines? How could the court specify boundary to go in a deed? But later the thought comes to me that it is a gift of not a special parcel, but half of a tract. Jasper's evidence, as a whole, is to be so interpreted. But exclude that, James England's evidence so shows. So does Nestor's and Edwards'. I hold that the evidence shows a gift of the undivided moiety. A sale of an undivided moiety would be enforceable, and so with a gift, I suppose, if other necessary elements are shown. Edwards' evidence shows that John England and his son Jasper, and Edwards, built a fence dividing the Jasper part from the residue, and the father said that the part Jasper lived on belonged to him. This seems to be a definition by the parties of the land, if we look at the pre-existing act of donation, or as a new one, and goes far to supply certainty as to the land intended to be given. The cases cited above allow this oral testimony to help out indefinite description. But view it as a gift, not of a part, but a moiety, and the taking possession of a particular end would give Jasper a preferable right to that end, in equity; at any rate vest a right calling for its proper legal treatment, in case of partition in equity. The father's will gave the tract to the two sons, Jasper and James, to be equally divided. If Jasper already had a vested right, enforceable against his father, this would not destroy, but confirm, it.

Having gotten rid of the question of certainty as to the description of the land, the next question is, has Jasper England shown a right to the land which would enforce

a deed from his father?  It is not a purchase on valuable consideration.  If it were, mere delivery of actual possession would be an act of part performance, calling for specific performance.  Jasper seeks to defend himself on the ground of a gift, based on meritorious consideration. Here there must be more than mere possession.  There must be what takes the place of valuable consideration in the case of a sale.  There must be expenditure of money or labor in valuable improvements.  Jasper left his father's roof in 1866, went into actual possession, built two houses upon the land, planted an orchard, cleared and fenced land, and lives yet on the land; so he meets this demand.  It is well established that a gift of land based on meritorious consideration, by reason of which the donee has been induced to make valuable improvements, will be enforced in equity by conveyance of the legal title.  *Frame* v. *Frame*, 32 W. Va.463, (9 S. E. 901); *Harrison* v. *Harrison*, 36 W. Va. 556, (15 S. E. 87; *Burkholder* v. *Ludlam*, 30 Grat. 255; *Halsey* v. *Peters'* Ex'r, 79 Va. 60.  So I conclude the dismissal of the bill as to Jasper England was right, as his land is not liable.

Next, as to the land devised by John England to James England.  I cannot see how the bill was dismissed as to this land.  James England did not answer.  His case is different from Jasper's.  He was not put in possession, but continued living with his father in the house on the land given him by the will, until his father's death.  He made no improvements.  Hence, if a gift were made to him, his possession was a mere continuance to dwell with his father as before, not a possession referable alone to the gift.  His land is liable to Crim's debts.  The land left by William Nestor, a surety in the bond, in the hands of his heirs, is liable to Crim's debts.  So is any balance in the hands of James Lawless, the purchaser of the land sold under the will of John England, and proceeds of its sale in the hands of John England's executor.  So are the legatees of John England liable for what they derived from the sale of his land.

I wrote up the case as to Samuel Moats, as he answered, and Crim's counsel discussed the case as to him, when I discovered that Moats is not a party to the suit, and the bill contains no mat-

ter touching him; and therefore I do not pass on his case in any manner, and the court decides nothing as to him. We reverse the decree, and dismiss the bill as to Jasper England, so far as it seeks to make his land devised to him by his father liable for Crim's debts, and discharge his said land therefrom, and we remand the case for further proceedings proper in the case, as above indicated, and further as equity requires.

*Reversed.*