**COTNER et al. v. LON JACOBS GRO. CO.**

No. 10262—Opinion Filed Nov. 8, 1921.

(Syllabus.)

1. **Guardian and Ward—Liability of Estate for Necessities—Payment of Claims—Power of County Court.**

The estates of wards of the court are ultimately liable for necessities for the support and care of wards of the court, and the county courts, being courts of general probate jurisdiction, as provided in section 16, art. 7, of the Constitution of the state, and the powers granted to them by sections 6535, 6542, 6544, and 6545, Rev. Laws of 1910, have power to pass upon and allow or disallow such claims when presented either by the claimant or by the guardian, and the power to direct the payment of said claims out of the estates of said minors, and also have the power to order reimbursement to the guardian in the event the guardian pays said claims.

2. **Appeal and Error—Review—Conclusiveness of Findings—Guardianship Proceedings—Allowance of Claims.**

Where a claimant presents his claim for allowance in a guardianship proceeding in the county court against the estates of wards for necessities furnished for the wards, and the court finds the goods furnished were necessities for the wards and were used by the wards, and such fact is not even questioned in the court, and the court further finds that the parents had not the means to support said wards, and this is not questioned at the hearing on said claim, and there is no showing of fraud or collusion, this court on appeal will not disturb such findings of the lower court.

3. **Guardian and Ward—Claim Against Estate for Necessities—Defenses—Election of Remedies—Prior Suit Against Parents.**

Where a claim for necessities for wards of the court was presented to the court and there was pleaded in bar of said claim a plea in the nature of an election upon inconsistent remedies, in this, to wit, that the claimant had previously sued and procured judgment against the parents of the wards in a civil action, and at the hearing on the claim the county court found that

there had been no satisfaction of said claim, and it is not even contended that it has been satisfied, held, that said proceeding did not involve a question of inconsistent remedies, but merely involved a question of joint liability of the parents and the estates of said wards, and the claimant had the right to pursue one or both to secure satisfaction of said claim.

Error from District Court, Mayes County; Preston S. Davis, Judge.

Action by the Lon Jacobs Grocery Company to compel Olivette C. Cotner, as guardian of two minors, to pay claim for necessaries furnished minors. Judgment for claimant, and guardian brings error. Affirmed.

Burns & Toney and Graves & Seaton, for plaintiffs in error.

A. C. Brewster and Forrester Brewster, for defendant in error.

ELTING, J. This suit was originally commenced in the county of Mayes county, Oklahoma, by Lon Jacobs Grocery Company, a corporation, by a petition for citation filed July 11, 1917, citing Olivette C. Cotner, guardian of Lawana C. Cotner and Holmes Russell Cotner, minors, directing her to appear as such guardian and defend against a claim for a bill for groceries in the sum of $142.66, with interest at 6 per cent. thereon from June 17, 1915, asking for allowance of said claim against the estate of the said minors, and asking that the same be paid out of the funds and monies belonging to said minors and that the guardian be directed to pay the same; alleging that said groceries were furnished for the use and benefit of said minors, and that the furnishing of the same was the furnishing of the necessities for the support and maintenance of said minors. Citation was issued and served on the said guardian, and the said guardian filed a response, contending that the county court did not have jurisdiction to determine the rights as between the parties, that said claim of the grocery company was not chargeable against the estate of

said minors, and one of the reasons was that on the 26th day of June, 1916, the grocery company had obtained joint judgment for said claim against L. A. Cotner, husband of the guardian and father of the minors, and against Olivette C. Cotner, mother of and guardian of said minors, before J. C. Chandler, a justice of the peace, in Mayes county; that execution was placed in the hands of the sheriff, who levied upon a note and the same was sold for the sum of $170 by the sheriff. In effect, the respondent guardian pleaded an election upon an inconsistent remedy wherein it was sought to hold the parents of the minors independently, and by reason of which the grocery company was estopped from enforcing the claim in the county court.

The county court, after hearing the evidence, sustained the claim of the grocery company, making the same charge against the funds of the said minors, one-half of said claims chargeable against the funds of Lawana C. Cotner, and one-half against the funds of Holmes Russell Cotner; finding that said groceries had been furnished on behalf of said minors at the instance of the guardian and upon her order, and directing the guardian, Olivette C. Cotner, to pay the amount of said judgment, $142.66, and interest at the rate of 6 per cent. from May 10, 1916, out of the funds of said minors as directed, and that she charge the same up against the estate of said minors in her settlement with them. To which action of the county court, the guardian excepted, gave notice of appeal and bond, and the same was appealed to the district court within and for Mayes county, state of Oklahoma. Upon said appeal to the district court said cause was tried de novo, and the district court sustained the judgment of the county court, to which action of the district court the guardian excepted, and motion for a new trial was filed by the guardian and the same was overruled by the court, and appeal prayed for and notice given in open court and petition in error, supported by case-made, filed in this court October 5, 1918.

The guardian appears as plaintiff in error and the Lon Jacobs Grocery Company, a corporation, appears as defendant in error, and they will hereafter be designated as plaintiff in error and defendant in error.

The contentions of the plaintiff in error are argued under two propositions:

"First. The county court and district court of Mayes county were without jurisdiction to render judgment or order requiring the guardian to pay the account of defendant in error from the estate of said minors.

"Second. The defendant in error was estopped to prosecute its claim in either the county court or the district court, because it had elected to sue the father and mother of plaintiffs in error in the justice of the peace court as individuals, said case being prosecuted to a final judgment."

We will first consider the first proposition. The evidence is quite brief in this case. The only witness that was examined was C. W. Bethel, bookkeeper and manager of the defendant in error. The rest of the evidence was certain record evidence that was introduced as to the appointment of the guardian, showing order appointing, bond of guardian, and letters; also the record of the proceedings on the claim in the county court and the record of the proceeding in the justice of the peace court in the suit by defendant in error against the father and mother and the proceedings of the sheriff under execution.

The record shows that on November 1, 1915, Olivette C. Cotner was by order of the court appointed guardian of her two minor children as heretofore named as plaintiffs in error, and bond approved and letters issued on January 15, 1916, to Olivette C. Cotner.

C. W. Bethel, bookkeeper and manager of the defendant in error corporation, testified in substance as follows: He testified that the guardian came to him, informing him that her husband had separated from her and was in Kentucky; that she was out of money and that she was compelled to have groceries, stating that she had a rent note due the children later in the year, and if he would let her have the groceries she would pay him out of the proceeds of this rent note due the minors. She expressed the extreme necessity for having the groceries. Upon this representation, he permitted her to open an account, and she began taking the groceries in the fore part of the year of 1916, and traded and continued to take them from time to time, and got the last item May 10, 1916, when the account was closed. It appears that the account was charged against the father and mother. Bethel was asked the question whether these groceries went for the use and benefit of the minors, and he answered that they did absolutely, and that the minors themselves had come and gotten the bulk of the groceries. The account, as it appears in the record, is not itemized, but Mr. Bethel had the tickets with him when he was on the witness stand, which no doubt showed the items of the groceries and the date purchased. The tickets were not asked to be introduced in evidence. Mr. Bethel was asked the question as to when the groceries

were purchased, by the attorney for the guardian, and his answer to said question would seem to indicate that a portion of the groceries were bought before the appointment of the mother as guardian. The evidence of Mr. Bethel shows, however, that the groceries were bought after the order appointing the mother as guardian, but that probably some of them were purchased before she procured her bond and qualified as such guardian; but under the holding herein this would make no difference, since our holding is that the evidence supports the judgment of the court, and that the claim was one which it was right to allow and charge to the estates of the minors. The guardian did not take the stand and refute the proposition that the groceries were used for the benefit of said minors and did not put in issue any of the statements of the clerk and manager of the defendant in error, C. W. Bethel.

The county court found that the father and mother did not have the necessary means to support the said minors, or property or funds out of which said claims could be paid.

While there does not appear to be any question of fact raised in this appeal, we have examined the evidence to satisfy ourselves that the trial court was justified in holding this a just claim against the estates of said minors for necessaries. We think that the county court had jurisdiction to allow said claim against the estate of said minors and in directing the guardian to pay the same out of funds of said minors. Sections 6542, 6544, and 6545, Rev. Laws 1910, are ample to grant authority to the guardian and county court to pay for necessities out of the funds of the minors. We think that the effect of the holding in the recent case of Evans et al. v. Harris, 60 Okla. 27, 158 Pac. 898, is to uphold the authority of the county court to allow claims and bind the estates of the wards of the court. The syllabus reads as follows:

"The county court has power to determine the amount due an attorney for services to a minor, where guardianship proceeding is pending in such court, and an order, upon the attorney's petition filed in such guardianship proceeding, asking the allowance and payment of such fees, is res judicata as to a subsequent suit against the guardian as such to recover the same fees for the same service."

It is true that in the cited case, the court, upon application of the attorney for $150 attorney fees, cut the fee to $100, which the attorney refused to accept and asked the county court to enter an order disallowing the claim in its entirety, and afterwards the attorney sued the guardian for attorney's fee for the $150 originally claimed in the county court in a court action commenced in the justice of the peace court. The guardian pleaded the judgment of the county court. It was held that the former judgment of the county court, disallowing the claim, was res judicata, and on appeal this court held that the county court had jurisdiction and judgment of the county court disallowing said claim was res judicata and binding upon the claimant.

The court, in the opinion in the cited case, quoted the following provision of the Constitution, being section 16, art. 7:

"The county court shall have the general jurisdiction of a probate court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards, grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; transact all business appertaining to estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition and distribution of the estates thereof."

Then in comment thereon, it states the following:

"The language of this section could hardly be broader. Certainly the settlement of the amount of these attorneys' fees was 'business appertaining to the estate' of this minor. Being such, the county court had jurisdiction to determine the questions regarding it."

In a very recent decision by this court, McFarland v. Barker et al., 80 Okla. 274, 196 Pac. 131, the syllabus reads as follows:

"The county court has power to determine the amount due for money advanced for support and education of a minor, where guardianship proceeding is pending in such court, and an order, upon petition filed in such guardianship proceeding, asking allowance and payment of such claim, is not subject to collateral attack, although said order may be erroneous and subject to review on appeal."

We think that the said holdings are interpretative of the provisions we have heretofore cited of our statutes pertaining to the power of the county court to determine claims for necessities of minors, and sustain such power.

The plaintiffs in error cite two cases which they contend uphold their contention in regard to the jurisdiction of the county court, namely, J. H. Cox & Co. v. Fisher, 61 Okla. 304, 161 Pac. 171, and Donnell v. Dansby, 58 Okla. 165, 159 Pac. 317. In the first case

cited above there was a suit for claim for merchandise sold and delivered to the father, who was legal guardian of the minors, and for their support. The father admitted liability for himself, but denied liability for the wards. The action was brought in a justice of the peace court. The cause was appealed to the district court, and a demurrer was sustained and the action dismissed as to the guardian and wards, and on appeal to this court the judgment of dismissal was sustained upon the theory that the father could not create a lien against the estate of the minors without a specific authorization of the county court. The cited case does not hold that the county court has not the power to allow such a claim, but holds, at least impliedly, that it has such power, and we do not think it supports the contention of the plaintiff in error.

The second case cited by plaintiff in error holds that in a suit in the district court by a guardian and ward against the administrator of a deceased guardian and the sureties on the deceased guardian's bond, said administrator and surety would not be permitted to plead and prove as a set-off a claim in favor of the deceased guardian which had not been presented to the county court and allowed therein. This holding does not support the contention of the plaintiff in error, but, in fact, supports the contention of the defendant in error as to the power of the county court to pass upon such claims.

The courts of other states have passed squarely upon the powers of probate courts in the matter of allowing claims under similar constitutional and statutory provisions to those of this state and defining the jurisdiction and powers of probate courts in the matter of passing upon and allowing claims against the estates of the wards of the courts of probate.

The case of McCoy et al. v. Lane et al., 66 Neb. 847, 92 N.E. 1010, is a case where a guardian employed certain attorneys to represent her wards in defense of an action brought to foreclose liens against the real estate belonging to said wards. Pursuant to the contract, the attorneys appeared and represented the wards. The guardian then refused to pay the fee agreed upon, whereupon the attorneys filed a claim in the county court for said fee. The guardian, after notice was given her, appeared and filed a demurrer to the petition, alleging that the probate court had no jurisdiction of the subject-matter and no jurisdiction of the parties. The county court, and district court on appeal,

held that the plaintiffs could not recover. The case upon appeal to the Supreme Court is reversed. In stating the matter, the court says:

"The main contention of the defendants in this case is that a guardian has no power to bind either the person or the estate of his ward by contract, and, although the contract expressly purports to bind the ward or his estate, the guardian alone is primarily liable thereon."

A number of authorities are then cited in support of this rule of law, and the court then continues:

"Notwithstanding the array of respectable authorities just cited, the doctrine does not commend itself to us, nor do we believe it to be compatible with our constitutional and statutory provisions touching the relations of guardian and ward. Section 16, art. 6, of the Constitution gives the county court original jurisdiction in all probate matters, the appointment of guardians, and the settlement of their accounts. Such jurisdiction is exclusive."

The court then quotes other sections of the Compiled Statutes providing for the appointment of guardians and defining their powers and duties; among such sections being the duties of the guardian to pay the debts of the ward out of the personal estate and income of the real estate, and to bring actions for said ward and represent him in all cases; and the court says:

"That, under such circumstances, the guardian may contract for such services, necessarily follows from the fact that such services are necessary for the proper discharge of his duties as guardian. * * * That the estate of the ward is ultimately liable for the reasonable expenses incurred in the discharge of such duties is clear, because it is conceded that the guardian may indemnify himself, in a proper case, out of the estate of the ward. The only question then is, whether a third party employed by the guardian, as such, to render services reasonably necessary in the discharge of the duties of such guardian, must look to the guardian alone, who in turn may indemnify himself out of the estate, or whether he may proceed directly against the estate."

The court then quotes approvingly from a case by the Supreme Court of Pennsylvania. In re Price's Appeal, 116 Pac. 410, 9 Atl. 856, and holds that the filing of a claim by a person entitled thereto is a proper subject for adjudication by the probate court. Quoting further from the case, the court holds in the body of the opinion as follows:

"Certainly claims for necessaries furnished to the guardian for the support of the ward in the hands of the guardian, and the

right to recover them from that estate cannot depend upon whether the guardian consents or refuses to pay them. It is no answer to say there is a right of common-law action against the guardian individually, or the minor individually, to recover such claim. If there is a right of recovery against the estate of the ward, it ought to be, and in our judgment it is, perfectly competent to pursue it in the court which has control over the person and estate of the minor, and the person and accounts of the guardian."

Among other cases recognizing the doctrine cited in this case, are the following: Crim v. England, 46 W. Va. 480, 33 S. E. 310; Rooker v. Rooker, 60 Ind. 550; Miller v. Hart, 135 Ind. 201, 34 N. E. 1003; Kelley v. Kelley, 72 Minn. 19, 74 N. W. 899.

In the case of Price's Appeal, supra, the Pennsylvania court after referring to the law in that jurisdiction, which from the reference appears to be in its results the same as the law of our state, concludes:

"It is not only the right but the plain duty of the guardians to seek for and recover the property of their wards when held adversely, and to employ counsel for that purpose when necessary. And in our opinion, it cannot be questioned that the estate of the ward is liable to make compensation for such service. It is equally clear that the guardian should not be held to a mere personal individual liability in such circumstances, and that the counsel should not be limited to personal liability of the guardian in recovering their just compensation."

And that charges for maintenance and support need not first be authorized by the court having jurisdiction of the estate of a minor, is held in the case of In re Beisel's Estate (Cal.) 40 Pac. 961, wherein the court says:

"A mother will be allowed in equity for the past maintenance of the children, from the death of the father, out of the estate of the children, though she has a separate estate. In re Besondy, 32 Minn. 385, 20 N. W. 366. The criterion for determining whether a past maintenance should be allowed is whether a chancery court would have authorized it in advance. Alston v. Alston, 34 Ala. 27."

And in Taylor v. Taylor, 43 Ind. 367, 87 N. E. 25, the court holds:

"The acts of the guardian of an insane person in taking care of her need not be authorized by the court in advance, nor need the compensation be fixed, but the court may afterwards approve his acts and pass on the compensation."

And in Church's Probate Law and Practice (2nd Ed.) vol. 1, page 282, the author announces the rule to be that:

"The guardian may make a contract for the support of his wards without sanction of the court; and if it is for a reasonable amount, the court should allow him credit therefor in his account."

One of the contentions that was raised was that the claimant himself had no authority to present the claim to the county court and that no one had authority to present the claim and ask its allowance but the guardian. We do not think there is anything in this contention. It seems to be based upon the contention that these claims are analogous to and are controlled by the provisions of the statutes as to allowing the claims in the estates of decedents, which require that they first be presented to the administrator; then if allowance is refused, the claimant must sue the administrator in a civil action. We do not think that law applies to a claim against a minor, and we hold that the claimant can present his claim to the county court for citation, as in the instant case, against the guardian to answer and defend, and that the county court has jurisdiction to allow or disallow said claim, and either party can have the same reviewed by appeal to the district court, as in the instant case. To hold otherwise would be to put the claimant at the mercy of the guardian.

While we hold that the county courts should use careful scrutiny in the allowance of said claims, we think that it comports with the policy of our law to hold that the county courts have the power to pass upon these claims and allow same, and where free from fraud or collusion and where not clearly against the weight of the evidence, the holdings of the court should be upheld.

To repeat, we cannot see why the estates of minors should not be held liable for the payment of just claims for the support, maintenance, and care of minors; such expenditures to comport reasonably with the extent of the estate of the said minors. The laws of guardianship are not intended to be a means of doing an injustice to those who deal with the estates of dependents, but have for their purpose the safeguarding of the rights and interests of such dependents against the covetous and those seeking to defraud the estates of such dependents.

Upon the second proposition involved in this case, the question of election by the claimant by reason of having sued the parents of these minors in the justice of the peace court on said claim wherein they procured judgment against the two parents jointly, we do not think that the rule as to election applies in this case. It is true that the account was charged against the two parents, that judgment was procured against

them in the suit, execution was levied upon a note, which execution was afterwards set aside and the note released from said execution, and upon the application of the guardian and upon the contention that the said note was the property of the minors and not the property of the judgment debtors, the father and mother. There has never been a satisfaction of the said debt. Bethel testified that it never had been satisfied, and his statement was unrefuted, and the county court found upon the hearing of said claim that the same was unsatisfied. The principle of law controlling in the election of remedies and bearing upon the question of when remedies are consistent and inconsistent is stated in paragraph 8, pages 9, 10, 11, and 12 of 20 C. J. The rule is also stated in vol. 15, Cyc. 252. See, also, 7 Ency. of Pleading and Practice.

We do not think, however, that the question of inconsistent remedies is what is involved in this case. The real question that is involved is the question of having two or more different parties liable for the same debt or one or two parties jointly liable in an individual capacity and a claim in the nature of an equitable claim to subject the estate in the control of the probate court to the satisfaction of the same claim for which the individuals are sought to be held, and there is no reason why both could not be held liable, and the claimant would have a right to exhaust as against all of them until he has procured full satisfaction of his claim. This, we think, is what is involved in this case, and it is not a question of inconsistent remedies. The theory of inconsistent remedies is where you have two remedies against the same party and where you pursue that party on one remedy and then afterwards undertake to exhaust against the same party by another remedy and the plea of election is brought to abate the second action based upon the contention that there had already been an election on a remedy that is held in law to be inconsistent with the first remedy sought to be enforced. To illustrate, you have a cause for action against John Doe which rests in tort, and you have the choice of two remedies, either to sue him in tort or to sue him as in contract, a contract being implied. These remedies are held to be inconsistent, and if you pitch your first suit in tort, you are held to have elected and will be denied the right to sue as upon an implied contract. But this is not this case.

We are unable to see why the parents of these minors could not personally bind themselves and at the same time the estate of these minors be bound for goods furnished and used as necessaries for said minors. It is true, as heretofore stated, that there could not be two satisfactions of the same debt. The defendant in error had exhausted the remedies against the parents and had failed to collect and we are unable to see why such proceedings against the parents should be a bar to an action in the county court to require the estates of said minors to pay the purchase price for necessities used by said minors.

The plaintiffs in error in their brief cite sections 4367, 4368, and 4376, Rev. Laws of Oklahoma, 1910; the same being found in chapter 55 on Parent and Child. The said sections so cited read as follows:

"The parent entitled to the custody of a child must give him support and education suitable to his circumstances. If the support and education which the father of a legitimate child is able to give are inadequate, the mother must assist him to the extent of her ability.

"The father of a legitimate, unmarried minor child is entitled to its custody, services and earnings; but he cannot transfer such custody or services to any other person, except the mother, without her written consent, unless she has deserted him, or is living separate from him by agreement. If the father is dead or be unable, or refuse to take the custody, or has abandoned his family, the mother is entitled thereto."

"If a parent neglects to provide articles necessary for his child who is under his charge, according to his circumstances, a third person may in good faith supply such necessaries and recover the reasonable value thereof from the parent."

In addition thereto, we will cite section 4370, and the same is as follows:

"The district court may direct an allowance to be made to a parent of a child, out of its property, for its past or future support and education, on such conditions as may be proper, whenever such direction is for its benefit."

Section 6535, Rev. Laws 1910, in chapter 64, on Guardian and Ward, reads as follows:

"If any minor, having a father living, has property, the income of which is sufficient for his maintenance and education in a manner more expensive than his father can reasonably afford, regard being had to the situation of the father's family, and to all the circumstances of the case, the expenses of the education (and maintenance of such minor may be defrayed out of the income) of his own property in whole or in part, as judged reasonable, and must be directed by the county court; and the charges therefor

may be allowed accordingly in the settlement of the accounts of his guardian."

We do not think that these statutes or their interpretation is against the position that we take in this case, but, in fact, they bear out the holding in this opinion. It appears that the father can be held to the support of his minor child in his custody, and it is his duty to furnish them necessities in accordance. with his circumstances. But in the instant case the facts show that the father and mother were not able to furnish necessities for their children, their minor wards, and the county court so found. The conclusion to be drawn, at least by implication, from the import of the above-quoted statutes is that when the parents are unable to support the minors and the minors themselves have an estate, it is in the power of the court to see that the necessities for the wards are allowed from the estate of such wards.

The following is from Woerner on American Law of Guardianship, page 164:

"And if he [guardian] contracts with a third person for the education and support of his ward, he may, perhaps, make himself liable personally, at law, to such third person, but in equity such personal liability of the guardian will not relieve the ward's estate, nor is the guardian liable personally, unless he consented to be so bound."

This, of course, refers to a guardian, while the sections of the statute we have quoted deal with parents and seem to make the parents bound in law to furnish minor children in their custody, according to their circumstances, while the guardian can only be held upon an agreement to pay. See, also, to the same effect, Sweet v. Montpelier Sav. Bank & Trust Co. (Kan.) 77 Pac. 538.

The last cited case quotes the following from Heidelbach v. National Park Bank, 87 Hun. 117, 33 N. Y. Supp. 794, which we think is applicable to the question under discussion:

"A large quantity of tin was shipped on the condition that the title to the same would be held in trust for the owner until he had received the proceeds of its sale. Sale was made by the trustee, who failed in business before remitting to the owner. The owner of the property presented his claim to the commissioners of the estate of the trustee, which was allowed, and a dividend paid thereon. Soon after the claim had been presented to the commissioners for allowance, the owner of the property commenced an action to recover from the bank to which the remittance for the proceeds of the sale of the property had been made, and recovered in the action to the extent of the amount of funds in the bank to the credit of the trustee at the time of his financial failure. The action against the bank was defended on the ground that the two proceedings to recover were inconsistent; that, plaintiff having elected to file his claim against the estate with the commissioners, he would not be permitted to maintain his action against the bank. The court, in passing upon the question, said: 'An election once made is determined forever, and it may be determined by any decisive act made with full knowledge of all the facts, and the bringing of an action to enforce one of the remedies sufficiently evidences such election; but if a person has two or more consistent, instead of two or more inconsistent, remedies, for the recovery of the same debt, he may resort to all, although he can have but one satisfaction.' The same view is expressed as to a trust fund in the opinion in Stoller v. Coates, 88 Mo. 514. See, also, Gambling v. Haight, 59 N. Y. 354. and Commercial Nat. Bank v. Kirkwood (Ill.) 50 N. E. 219. In Bowen, Executor, v. Mandeville, 95 N. Y. 237, the court said: 'A party may prosecute as many remedies as he legally has, provided they are consistent and concurrent'." See, also, 7 Encyc. of Plead. & Prac. 362.

See Fowler. Executor, v. Bowery Savings Bank. 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145. 10 Am. St. Rep. 479.

We hold that the rule as to inconsistent remedies does not apply in this case, but rather that of joint liability or liability of the parents and right to exhaust against the ward's estate, and that the claimant had a right to present and have the claim allowed against the estate of said minors, notwithstanding a suit had been prosecuted to a judgment against the parents of the minors, and where said claim has been allowed under the circumstances such as are shown in this record, such judgment will not be disturbed upon appeal.

The judgment of the trial court is, therefore, affirmed.

HARRISON, C. J., PITCHFORD. V. C. J., and McNEILL and NICHOLSON, JJ., concur.