Walter E. TATE, Plaintiff,

v.

BROWNING–FERRIS, INC., a foreign
corporation, Defendant.

No. 74863.

Supreme Court of Oklahoma.

May 19, 1992.

As Corrected May 22, 1992.

Frederick W. Southern, Jr., Oklahoma City, for plaintiff.

Mona S. Lambird, Marcia A. Rupert and R. Brown Wallace, Andrews, Davis, Legg, Bixler, Milsten & Price, Oklahoma City, for defendant.

OPALA, Chief Justice.

Pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1981 §§ 1601 *et seq.*, the United States District Court for the Western District of Oklahoma certified for this court's answer the following question:

"Where an at-will employee terminated by a private employer files suit alleging facts that, if true, violate state and federal statutes providing remedies for employment discrimination, can the employee-plaintiff state a tort cause of action based on the same facts, pursuant to the public policy exception to the at-will termination rule, recently recognized by the Oklahoma Supreme Court in *Burk v. K–Mart*, 770 P.2d 24 (Okla.1989)?" [1]

We answer this question in the affirmative, *noting* that the federal statute violated does not preempt state law and *holding* that the applicable state statute neither explicitly nor implicitly provides an exclusive remedy for employment-related discrimination. Federal trial court judges sitting in this state are divided on whether a plaintiff may assert a pendent [2] Oklahoma common-law tort claim for employment discrimination or must instead rely *exclusively* on our regime of statute-based regulatory remedies. [3] For a complete answer we must address a question expressly tendered in the parties' briefs and fairly comprised in the plaintiff's federal-court complaint allegations, although not explicitly posed: Are state-law remedies prescribed by Oklahoma's anti-discrimination statute, 25 O.S.1981 §§ 1101 *et seq.* [the Act], [4] exclusive for vindication of a racially motivated wrongful or retaliatory discharge? [5] *We answer this question in the negative.*

## I.

## THE ANATOMY OF LITIGATION

Walter E. Tate (employee), a black male, filed two racial discrimination grievances with the Equal Employment Opportunity

1. The cited case will be referred to throughout this opinion as *"Burk."*

2. "Pendent jurisdiction," originally a case-law doctrine, was codified as "supplemental" federal-court cognizance in 28 U.S.C. § 1367, part of the Judicial Improvements Act of 1990 (Pub.L. 101–650). Its pertinent terms are:

 "(a) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

 Before pendent jurisdiction's codification, federal courts had discretion to hear federal-law and state-law claims together if judicial economy, convenience and fairness would be served. *United Mineworkers v. Gibbs,* 383 U.S. 715, 723–724, 86 S.Ct. 1130, 1137–1138, 16 L.Ed.2d 218 (1966). Although this jurisdiction is no longer purely discretionary, a district court may nonetheless decline to exercise it in some instances. 28 U.S.C. § 1367(c).

3. The defendant lists some unpublished orders from two federal-court districts which demonstrate lack of harmony on this question: *Smith*

*v. Dillard Dept. Stores, Inc.,* No. CIV–88–2212–R (W.D.Okla. Nov. 20, 1989); *Thompson v. North American Insurance Agency, Inc.,* No. CIV–88–1781–A (W.D.Okla. Nov. 1, 1989); *Vernon v. KFC Corp.,* No. 89–C–216–E (N.D.Okla. Oct. 12, 1989); *Paynter v. American Legion Children's Home Corp.,* Nos. CIV–88–166–W and CIV–88–2053–W (W.D.Okla. Oct. 1, 1989); *Mannheimer v. R.W. Howe Corp.,* No. CIV–88–2182–A (W.D.Okla. Sept. 11, 1989); *Ugochukwu v. Kentucky Fried Chicken National Management Co.,* No. CIV–87–2321–A (W.D.Okla. April 5, 1989); *Patterson v. Hudson Farms, Inc.,* No. 88–C–27–E (N.D.Okla. March 1, 1989).

4. *See infra* Section V for a detailed discussion of this Act's terms. Unless otherwise indicated, references in this opinion are to Oklahoma statutes in effect in 1989 when the employee was discharged.

5. The federal court order certifying the instant state-law question "recommends that the parties be permitted to file briefs fully addressing the certified question...."

 The employee gives the following explanation of his position:

 "The 'Public Policy' exception to the employment-at-will doctrine established under *Burk* is equally applicable to situations where

Commission (EEOC). The employee charged his employer, Browning–Ferris, Inc. (BFI) with (1) discrimination against black males and (2) a racially motivated wrongful discharge in retaliation for his initial EEOC complaint.

██ When the EEOC failed to resolve the dispute, the employee sued in federal court under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq*. He sought reinstatement with back pay [6] or alternatively, front pay [7] and attorney's fees. Based upon the same

> both discriminatory discharge and retaliatory discharge are alleged. The equitable remedies granted by Title VII and the Oklahoma Anti–Discrimination Law [25 O.S.1981 §§ 1101 *et seq*.] are inadequate to make the Plaintiff whole."
>
> The defendant contends that the state common law does not apply and argues the state statutory-law regulatory remedy is exclusive:
>
> "In the case of employment discrimination, however, the Oklahoma public policy sought to be vindicated is expressed in statutes which also embody remedies. Oklahoma's anti-discrimination statutes empower the Oklahoma Human Rights Commission ("OHRC") to eliminate any "discriminatory practice." *See* 25 O.S.1981 § 1501. The definition of "discriminatory practice" includes an employer's discharge or discrimination against an individual as to terms or conditions of employment because of race, *id*. § 1302, as well as retaliation against a person who opposes a discriminatory practice or who files a complaint pursuant to the statutes, *id*. § 1601. The remedial scheme enacted by the Oklahoma Legislature involves administrative proceedings before OHRC, which may investigate, hold hearings, make determinations, conciliate, and order injunctive and affirmative relief, including reinstatement and back pay for employees. *See id*. §§ 1501–08; *see also id*. § 1505(c)(1). * * * [A] common-law claim should not be allowed in the employment discrimination context because it would countermand the applicable statutory schemes."

**6.** 42 U.S.C. 2000e–5(g). The term "back pay" refers generally to awards for a complainant's lost earnings. It includes *all wages that would have been earned* absent the illegal discrimination. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). *See also* Annotation, Award of Backpay Under EEOA, 21 ALR Fed. 472 (1974).

**7.** "Front pay" refers to awards of prospective wages given in lieu of reinstatement. The court has discretion under 42 U.S.C. § 2000e–5(g) to

facts the employee-plaintiff also pressed a pendent state-law tort claim for compensatory and punitive damages. BFI sought the tort claim's dismissal, contending the terms of the Act [8] provide a different and exclusive state-law remedy for racially motivated employment discrimination and retaliatory discharge. Before BFI's quest for dismissal was decided, the court certified for our answer the question now under consideration.[9]

The plaintiff contends he was wrongly demoted and his job given to a less quali-

> grant any equitable relief it deems appropriate. *See Franks v. Bowman Transportation Company*, 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976); *Albemarle Paper Co. v. Moody, supra* note 6, 422 U.S. at 418, 95 S.Ct. at 2372; *Fitzgerald v. Sirloin Stockade, Inc.* 624 F.2d 945, 957 (10th Cir.1980).

**8.** 25 O.S.1991 §§ 1101 *et seq*. *See supra* note 4.

**9.** BFI sought certification of this question for our answer; the employee agreed to its submission. The parties adopted the following statement of agreed material facts:

> "On May 8, 1989, plaintiff, a black male employed by defendant until May 8, 1987, filed an action alleging racial discrimination and retaliation for exercising statutory remedies for employment discrimination. Specifically, plaintiff's pleading alleged the following facts: Plaintiff was subjected to unequal terms and conditions of employment for an extended period; Plaintiff was demoted from 'driver' to 'driver's helper' so that a less qualified white employee with less seniority could be promoted to the higher position; plaintiff was harassed and intimidated by defendant after he filed a charge of discrimination with the Equal Employment Opportunity Commission (the 'EEOC'); plaintiff received lower pay and harsher discipline than similarly situated white employees; plaintiff received the most difficult job assignments; plaintiff was considered one of the best drivers, with a good driving record and a good reputation for safety; plaintiff was discharged for 'stealing a truck' when there was simply a misunderstanding concerning truck assignments; the employer's stated reasons for terminating plaintiff were a pretext for discrimination; plaintiff was terminated because of his race; and plaintiff was terminated in retaliation for exercising his statutory rights under Title VII.
>
> Plaintiff filed two race discrimination charges with the EEOC, one alleging defendant engaged in discriminatory employment practices and a second claiming retaliation following defendant's termination of his em-

fied white person. He urges that when he reported this violation to the EEOC, his employer harassed him and then discharged him. He invokes the common law of the state to recover compensatory and punitive damages for racially discriminatory and retaliatory treatment.[10]

## II.

## TITLE VII DOES NOT PREEMPT STATE LAW

■ Although neither party contends federal law preempts this state's employment discrimination laws,[11] resolution of this issue is a critical prerequisite for the certified question's consideration. The plaintiff brings his federal claims under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq.* That act provides in two separate sections that state laws will be preempted *only if they actually conflict with federal law.*[12] The United States Supreme Court has interpreted these provisions as explicit disclaimers of any federal intent categorically to preempt state law or to "occupy the field" of employment discrimination.[13] The Nation's highest court describes Title VII as a floor beneath which federally provided protection may not drop rather than a ceiling

ployment. The EEOC completed processing of both charges in April of 1989.

Based on these factual allegations, plaintiff now asserts federal and state claims. Plaintiff alleges that defendant's conduct violated Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.,* for which plaintiff seeks reinstatement, including back pay and benefits, together with all retroactive seniority, promotions and benefits, or alternatively, front pay, and attorneys fees. Plaintiff also has asserted a public policy tort cause of action under state law, alleging that defendant's conduct violates the public policy of the State of Oklahoma, for which he seeks compensatory damages, including damages for emotional distress, and punitive damages."

**10.** The plaintiff seeks damages for emotional distress, although he has not asserted an independent state-law claim for the tort of "outrage." *See Eddy v. Brown,* Okl., 715 P.2d 74 (1986), for an outrage claim's elements. We address here *only* the state-law tort of wrongful discharge.

**11.** Federal preemption was dealt with in *Todd v. Frank's Tong Service, Inc.,* Okl., 784 P.2d 47 (1989), where the plaintiff claimed a tortious breach based upon the public-policy exception to the employment-at-will doctrine. *See Burk v. K-Mart,* Okl., 770 P.2d 24 (1989). We held the Federal Surface Transportation Assistance Act's "whistleblower" provision not preemptive of state-law wrongful termination claims. *Todd, supra* at 50.

**12.** Section 708 of Title VII, 42 U.S.C. § 2000e-7 provides:

"Nothing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title."

Section 1104 of Title XI, 42 U.S.C. 2000h-4, applicable to all titles of the Civil Rights Act, establishes the following standard for preemption:

"Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof."

The Civil Rights Act of 1991 (Pub.Law 102-166 [S.1745]; Nov. 21, 1991) amends the Civil Rights Act of 1964 to strengthen and improve federal civil rights law. The amendment provides, among other changes, for jury trials and for compensatory as well as punitive damages for employment discrimination. The pertinent sections cited here are not affected by the recent amendment.

**13.** *California Federal S. & L. Assn. v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613, 623 (1987). The Court held in *Guerra* that Title VII does not preempt a state law that (1) prohibits pregnancy-based sex discrimination and (2) provides that a woman affected by pregnancy, childbirth or related medical conditions shall be treated the same as "other persons not so affected...." *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), where the Court held that an employee's statutory right to a trial *de novo* under Title VII may not be foreclosed by prior submission of his claim to final arbitration under a collective bargaining agreement. In *Alexander,* the Court found from the legislative history of Title VII that (1) Congress considered the antidiscrimination policy a top priority and (2) it defeated an attempt to make the Title VII remedy for employment discrimination exclusive. *Alexander, supra* at 48, n. 9, 94 S.Ct. at 1019-1020 n. 9, 39 L.Ed.2d at 158, n. 9. Congress decided Title VII's underlying policy would be

above which it may not rise.[14] *In short, states' remedies for relief from employment discrimination and for the compensation of its victims may be both different from and broader than those provided by Title VII.*[15]

BFI contends a common-law-based state tort remedy does not lie because the terms of the Oklahoma Act[16] (1) *declare* a racially discriminatory discharge to be against public policy, (2) *prohibit* the offensive conduct charged here and (3) *provide* a regulatory remedy through the Oklahoma Human Rights Commission [the Commission].[17] The employer fears that if a tort action were allowed, employees would circumvent the statute, reaching for the more generous *ex delicto* remedy. Defendant directs our attention to a case from another state that confines the abusive-discharge tort to acts violative of a clear public-policy mandate which would otherwise go unvindicated by any civil remedy.[18] BFI urges us to restrict the *Burk* doctrine to classic "whistleblower" claims.[19]

The employee contends Title VII's administrative procedures for investigation, conference, conciliation and persuasion have failed. He urges that statute-based state-

law regulatory remedies are not only inadequate to make *him* whole; they do not succeed in *deterring* discriminatory practices. He argues the Oklahoma statutory remedies are neither preemptive nor exclusive of the common-law tort regime. The employee directs our attention to other states' jurisprudence which holds that tort remedies supplement employment discrimination statutes.[20] According to the employee, his only recourse now is through the courts, where under the common-law tort theory recognized in *Burk*, the employer may be required to respond in damages for racially motivated discrimination and retaliatory discharge. The correctness of the plaintiff's assessment depends not only upon whether he has a common-law *Burk* claim but also upon the degree of permissible interaction of Oklahoma's common-law system with the applicable statutory regime of remedies.[21]

## III.

## THE PUBLIC–POLICY EXCEPTION TO THE TERMINATION–AT–WILL RULE

This court declined in *Hinson v.*

better served by the availability of multiple enforcement fora. *Alexander, supra* at 50–51, 94 S.Ct. at 1021, 39 L.Ed.2d at 159.

14. *California Federal S. & L. Assn. v. Guerra, supra* note 13, 479 U.S. at 285, 107 S.Ct. at 691, 93 L.Ed.2d at 623.

15. Insofar as state laws may *duplicate* federal law, a plaintiff could not claim double recovery. As in any case where there are multiple remedies, *Oklahoma law will allow only one recovery to make the plaintiff whole. Cotner v. Lon Jacobs Grocery Co.,* 84 Okl. 1, 202 P. 997, 1002 (1921).

16. 25 O.S.1981 §§ 1101 *et seq. See supra* note 4.

17. The Oklahoma Human Rights Commission is the agency charged with enforcement of the Act. *See* 25 O.S.1981 §§ 1501 *et seq. See also infra* Section V for the details of the Commission's duties under the Act.

18. *Makovi v. Sherwin–Williams Co.,* 316 Md. 603, 561 A.2d 179, 190 (1989). The cited case surveys other state and federal jurisprudence upon the question here under consideration. For a similar review, *see* the cases cited *infra* note 21.

19. Defendant cites *Todd, supra* note 11, and *Vannerson v. Board of Regents,* 784 P.2d 1053 (1989), classic "whistleblower" cases. A "whistleblower" is defined as a person who exposes his employer's wrongdoing. These cases cover discharges for reporting—internally, publicly or both—an employer's illegal activities. *Hinson v. Cameron,* Okl., 742 P.2d 549, 553 n. 11 (1987).

20. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985); *Broomfield v. Lundell,* 159 Ariz. 349, 767 P.2d 697 (Ariz.App. 1988); *Holien v. Sears, Roebuck & Co.,* 298 Or. 76, 689 P.2d 1292 (1984); *Wiggins v. Eastern Associated Coal Corp.,* 178 W.Va. 63, 357 S.E.2d 745 (1987).

21. Other states' decisions allowing or disallowing a common-law remedy for employment discrimination depend upon rationale peculiar to statutory and common-law norms there in place. Some courts have held that in a specified area the statutory remedy is exclusive and hence precludes a common-law wrongful discharge action. *See, e.g., Lui v. Intercontinental Hotels Corp.,* 634 F.Supp. 684 (D.Haw.1986) (where the policy is created by statute, the statutory remedy is exclusive); *Reeder–Baker v. Lincoln Nat'l Corp.,* 644 F.Supp. 983 (N.D.Ind.1986) (plaintiff has and must use statutory remedies

*Cameron*[22] to impose upon an employer the legal duty not to terminate an at-will employee in bad faith.[23] We noted some nationally recognized departure from yesteryear's strict termination-at-will doctrine. The recent jurisprudence rests on three distinct theories: (a) public-policy tort, (b) tortious breach of an implied covenant of good faith and fair dealing and (c) implied contract that restricts the employer's power to discharge. We rejected the good-faith-and-fair-dealing notion for every employment contract.[24] We later recognized in *Burk* the need to "accommodate the

to challenge her discharge); *Bonham v. Dresser Indus. Inc.*, 569 F.2d 187 (3d Cir.1977) (statutory remedies for age discrimination are exclusive); *Teale v. Sears, Roebuck & Co.*, 66 Ill.2d 1, 3 Ill.Dec. 834, 359 N.E.2d 473 (1976) (state age discrimination statute is exclusive); *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193 (Iowa 1985) (statute for wrongful discharge because of disability is exclusive); *Johnson v. U.S. Steel Corp.*, 348 Mass. 168, 202 N.E.2d 816 (1964) (wrongful discharge statute that provides criminal penalty is exclusive even though there is no civil remedy); *Howard v. Dorr Woolen Co.*, 120 N.H. 295, 414 A.2d 1273 (1980) (proper remedy for age discrimination is provided by statute).

Other courts disallow common-law tort actions, not for preemption reasons, but because of the inherent nature of the public-policy exception from which the tort of wrongful discharge is derived. Those courts strictly limit the exception to those discharges which are in violation of a public policy that would otherwise go unvindicated by a civil remedy. *See, e.g., Crews v. Memorex Corp.*, 588 F.Supp. 27, 29 (D.Mass.1984) (theoretical reason for creating a common-law tort action based on public policy is absent when a statutory remedy is available); *McCluney v. Joseph Schlitz Brewing Co.*, 489 F.Supp. 24, 26 (E.D.Wis.1980) (private action should be implied for employment discharges only when there is no other adequate remedy to vindicate public policy violation); *Makovi v. Sherwin–Williams Co., supra* note 18 (tort remedy available only for discharges which violate a clear mandate of public policy that would otherwise go unvindicated by a civil remedy). These courts, which hold that the cause of action exists to insure that public policy will not be violated with impunity simply because there is no remedy to safeguard it, view the action not as a private right, but rather as an exceptional avenue of relief granted a plaintiff to prevent a recognized public wrong. Their primary concern is preservation of the anti-discrimination policy rather than vindication of an injured employee's private right. *Wehr v. Burroughs Corp.*, 438 F.Supp. 1052, 1054–1055 (E.D.Pa. 1977), *aff'd*, 619 F.2d 276 (3d Cir.1980).

Some courts hold the common-law remedy supplements rather than hinders the statutory remedies' goals. They explain that the common-law tort action's availability may deter future discrimination and combat entrenched existing illegal employment practices. *See, e.g., Wagenseller, supra* note 20 (plaintiff has tort action for sex discrimination); *Broomfield v.* *Lundell, supra* note 20 (Arizona Civil Rights Act does not preempt tort action for wrongful discharge for sex discrimination); *Holmes v. Haughton Elevator Co.*, 404 Mich. 36, 272 N.W.2d 550 (1978) (administrative remedy in Michigan's Fair Employment Practices Act is not employee's exclusive remedy for age discrimination); *Pompey v. General Motors Corp.*, 385 Mich. 537, 189 N.W.2d 243 (1971) (administrative remedy in Michigan's Fair Employment Practices Act is not employee's exclusive remedy for race discrimination); *Lally v. Copygraphics*, 173 N.J.Super. 162, 413 A.2d 960 (1980) (administrative remedy under retaliatory discrimination statute does not exclude an action for both compensatory and punitive damages); *Holien v. Sears, Roebuck and Co., supra* note 20 (there is no inherent inconsistency between a statutory suit's equitable relief and a common-law action's legal remedies; statutory remedies may fail to address the personal nature of the injury to a wrongfully discharged employee); *Kofoid v. Woodard Hotels, Inc.*, 78 Or.App. 283, 716 P.2d 771 (1986) (statute providing relief for sex-based employment discrimination does not preempt common-law action for wrongful discharge); *Kelsay v. Motorola Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978) (employee has civil tort claim for workers' compensation retaliation where statute provides only criminal penalty); *Wiggins v. Eastern Associated Coal Corp., supra* note 20 (plaintiff has tort action supplemental to equitable relief of federal and state mine safety laws).

**22.** *Supra* note 19 at 552.

**23.** The at-will employment doctrine is an American common-law rule under which either the employer or employee can terminate the relationship without liability when the length of the master/servant bond is unspecified by contract. *See Hinson v. Cameron, supra* note 19 at 552; *Singh v. Cities Service Oil Company*, Okl., 554 P.2d 1367 (1976); *Foster v. Atlas Life Ins. Co.*, 154 Okl. 30, 6 P.2d 805 (1932).

**24.** Under the public-policy tort rubric five grounds upon which courts have held an at-will employee's claim actionable came to be identified. These were discharges for (1) refusing to participate in an illegal activity; (2) performing an important public obligation; (3) exercising a legal right or interest; (4) exposing some wrongdoing by the employer; and (5) performing an act that public policy would encourage or refusing to do something that public policy would

competing interests of society, the employee and the employer." [25] There we adopted the public-policy tort exception to the termination-at-will doctrine, forging narrowly its parameters for cases where the discharge violates public policy mandated by clearly articulated constitutional, statutory or decisional law.[26] Confident that the public-policy exception "serves the cause of equity as well as [that of] the market place," [27] we held in *Burk* that termination of an at-will employee, which contravenes a clear mandate of public policy is a *tortious breach of contractual obligations, compensable in damages.*[28] Since *Burk* the public-policy exception has been applied in a number of cases.[29] Still undecided is whether *racially discriminatory* conduct that leads to a *retaliatory* discharge upon an employee's complaint is actionable under this exception.

*As there can be no doubt at this point in time that racial discrimination in the workplace clearly contravenes the public policy declared by the Act,*[30] *we give today a categorically affirmative answer to the* question *whether a racially motivated discharge or one in retaliation for filing a racial discrimination complaint offends a clear mandate of "public policy" that comes within the protection of Burk.* What remains to be determined is the effect of Oklahoma's anti-discrimination remedies' regime on the viability of the common-law *Burk* claim.

## IV.

## EXCEPT AS ALTERED BY OUR CONSTITUTION AND STATUTES, THE COMMON LAW REMAINS IN FULL FORCE

By statutory mandate *the common law remains in full force in this state, unless a statute explicitly provides to the contrary.*[31] Oklahoma law does not permit legislative abrogation of the common law by *implication;*[32] rather, its alteration must be clearly and plainly expressed.[33] An intent to change the common law will not be presumed from an ambiguous, doubtful or inconclusive text.[34] A presumption favors the preservation of

---

condemn, when the discharge is coupled with a showing of bad faith, malice or retaliation. *Hinson v. Cameron, supra* note 19 at 552–553.

**25.** *Burk, supra* note 11 at 28. *Burk* received retroactive application in *McGehee v. Florafax Intern., Inc.*, Okl., 776 P.2d 852 (1989).

**26.** *Burk, supra* note 11 at 28.

**27.** *Burk supra* note 11 at 29, quoting from *Hall v. Farmers Insurance Exchange*, Okl., 713 P.2d 1027, 1031 (1985).

**28.** *Burk, supra* note 11 at 28 & n. 10. The terms of 23 O.S.1981 § 3 provide:
"Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

**29.** We upheld in *Vannerson, supra* note 19, a judgment on a jury verdict for *retaliatory* discharge resulting from an employee's discovery and report of illegal activities; in *Todd, supra* note 11, we held a state common-law claim for wrongful termination is not preempted by the federal Surface Transportation Assistance Act.

**30.** 25 O.S.1981 §§ 1101 *et seq. See supra* note 4.

**31.** 12 O.S.1991 § 2. Its relevant terms provide:
"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; ..."

**32.** *Silver v. Slusher*, Okl., 770 P.2d 878, 884 (1989); *Ricks Exploration v. Okl. Water Resources Bd.*, Okl., 695 P.2d 498, 504 (1984); *Roxana Petroleum Co. v. Cope*, 132 Okl. 152, 269 P. 1084, 1085 (1928) (the court's syllabus ¶ 3); *Reaves v. Reaves*, 15 Okl. 240, 82 P. 490, 495 (1905); *State Mut. Life Assur. Co. of Amer. v. Hampton*, Okl., 696 P.2d 1027, 1036 (1985) (Opala, J., concurring).

**33.** *Fuller v. Odom*, Okl., 741 P.2d 449, 451 (1987); *McCormack v. Oklahoma Pub. Co.*, Okl., 613 P.2d 737, 740 (1980); *Reaves, supra* note 32 at 495; *Hampton, supra* note 32 at 1036 (Opala, J., concurring).

**34.** *Reaves, supra* note 32 at 495; *Hampton, supra* note 32 at 1036 (Opala, J., concurring).

common-law rights.[35] *Where the common law gives a remedy, and another is provided by statute, the latter is merely cumulative, unless the statute declares it to be exclusive.*[36]

▆ Extensive amendments and additions were made in 1990 to Oklahoma's anti-discrimination statute.[37] It is inconsequential that the Act was initially passed before the public-policy tort exception came to be crafted in *Burk.*[38] The common law forms "a dynamic and growing" body of rules that change with the conditions of society.[39] In order to supplant effectively the public-policy tort exception, the legislature would have to make textually demonstrable its design to occupy the entire field of employment discrimination to the exclusion of all other legal sources. As we explain later, not only is such an all-inclusive scheme not apparent from a plain reading of the statute, but also its argued

**35.** *Reaves, supra* note 32 at 495.

**36.** *Bowles v. Neely,* 28 Okl. 556, 115 P. 344, 346 (1911). We are not unmindful of cases which hold that a statutory remedy is exclusive when the statute appears to create both a new right and a new remedy. *Ewing v. Cadwell,* 121 Okl., 247 P. 665, 666 (1926); *Alfe v. New York Life Ins. Co.,* 180 Okl. 87, 67 P.2d 947 (1937) (the court's syllabus ¶ 1). These cases are limited to situations where *an enactment imposes some new duty and fashions a new remedy for the enforcement of a new right whose breach becomes redressible solely by that remedy.* Those cases hold that the predecessor statutes of our Residential Landlord and Tenant Act, 41 O.S. 1991 §§ 101 *et seq.,* exclusively occupied the field of landlord/tenant relationship and precluded a tort action by a tenant against the landlord. In *Wagoner v. Bennett,* Okl., 814 P.2d 476, 480 (1991), the court looked to *the Residential Landlord and Tenant Act itself to assay its sweep.* That act explicitly provides that it "applies to, regulates, and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state." By these words, the court held, the legislature expressed an intent to occupy the field of residential landlord/tenant relationship. *Wagoner* posed a question unlike that confronting us today—*whether punitive damages might be awarded where the statute substitutes double damages as a penalty.*

Instances in which the common-law system of remedies continues side by side with a *statute that evinces no legislative intent to supplant it* are not uncommon in Oklahoma jurisprudence. *See, e.g., Hood v. Hagler,* Okl., 606 P.2d 548, 552–553 (1980); *In re Adoption of Graves,* Okl., 481 P.2d 136, 138 (1971); *Hampton, supra* note 32 at 1036 (Opala, J., concurring). The court held in *Hampton, supra* note 32 at 1032, that Oklahoma's "slayer statute," 84 O.S.1981 § 231, "bars a beneficiary who has actually been convicted of the insured's murder or first-degree manslaughter from recovering under the insurance policy," but does not preclude application of the common-law. In a civil action following an acquittal, the common-law rule allows the beneficiary's exclusion if the disqualifying crime is proved by a preponderance of the evidence. *Hood, supra* holds that the "dog bite statute," 4 O.S.1981 § 42.1, does not prevent a judgment's reversal for a trial court's failure also to instruct on common-law negligence. In *Adoption of Graves, supra,* the court held that the provisions of 10 O.S.1961 § 60.10 of the Uniform Adoption Act did not abrogate the pre-existing, common-law right of natural parents to revoke their consent to an adoption for fraud practiced by the adoptive parents.

**37.** For the changes compare 25 O.S.Supp.1990 §§ 1101 *et seq.* to 25 O.S.1981 §§ 1101 *et seq.*

**38.** The defendant contends the Oklahoma legislature could not have specifically intended the Act to preempt or exclude a tort cause of action because *Burk* had not been decided when the statute was enacted.

Oklahoma does not follow the rule that a legislative intent to abrogate or supersede any common-law remedy may be implied "even though the legislature might not then have been aware of such a remedy." Rather, as earlier stated, our doctrine holds that unless the legislature declares a statute to be exclusive, Oklahoma common law serves to supplement statutory law. *See supra* notes 31–36. Some other states sanction repeal of the common law by implication. *See, e.g., Brown v. Transcon Lines,* 284 Or. 597, 588 P.2d 1087 (1978).

There is no reason to conclude the legislature was either aware of a common-law remedy or intended to eliminate one and substitute some other procedure when the statute was passed or later, in 1990, when it was extensively revised. Although *Burk* was decided in 1989, the post-*Burk* 1990 revision of the Act amended nineteen sections, repealed one and added six. Only twelve of the original sections remain intact. In the 1990 revision a private cause of action was added only for those aggrieved by handicap discrimination. *See* 25 O.S.1991 § 1901A., *infra* note 63.

**39.** *Brigance v. Velvet Dove Restaurant, Inc.,* Okl., 725 P.2d 300, 303 (1986), quoting *McCormack, supra* note 33 at 740. *See also Vanderpool v. State,* Okl., 672 P.2d 1153, 1157 (1983).

exclusivity would conflict with the Act's express purpose—to further the policies embodied in Title VII.[40] *Moreover, to conclude today that the statute's vindication regime for racial discrimination is indeed exclusive would render the Act's remedies constitutionally infirm.*[41]

## V.

## THE TERMS OF THE ACT DO NOT—EXPRESSLY OR EVEN BY IMPLICATION—PROVIDE AN EXCLUSIVE REMEDY FOR RACIALLY MOTIVATED EMPLOYMENT DISCRIMINATION AND RETALIATORY DISCHARGE

Oklahoma's regulatory Act[42] prohibits discrimination, whether it be in employment,[43] public accommodation,[44] or housing.[45] Among other types of offending conduct, the Act proscribes an employer's discriminatory acts toward, or discharge of, a person because of *race* or *color*.[46] Retaliation for challenging a discriminatory practice is also prohibited.[47] The Commission[48] is charged with enforcing the law, subject only to judicial review.[49] It has the power to receive, investigate, seek to conciliate, hold hearing on, and decide complaints alleging the Act's violation.[50] If after a hearing, the Commission determines that an employer has engaged in discriminatory conduct which cannot be eliminated by conference, conciliation, or

40. Title VII is not exclusive. It strongly fosters a full panoply of state and federal remedies. *See supra* Section II.

41. *See infra* Section V and notes 64 & 65.

42. 25 O.S.1981 §§ 1101 *et seq.*

43. Article 3., 25 O.S.1981 §§ 1301 *et seq.*

44. Article 4., 25 O.S.1981 §§ 1401 *et seq.*

45. Article 4.A., 25 O.S.Supp.1985 §§ 1451 *et seq.* The Act is applicable to employers of fifteen or more persons. 25 O.S.1981 § 1301. Its pertinent terms are:

> "1. 'Employer' means a person who has fifteen or more employees for each working day in each of ·twenty (20) or more calendar weeks in the current or preceding calendar year...."

46. Violations are referred to as "discriminatory practices." 25 O.S.1981 § 1201(3). The pertinent terms of 25 O.S.1981 § 1302 are:

> "A. It is a discriminatory practice for an employer:
> 1. To fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of *race, color,* religion, sex, national origin, age, or handicap unless such action is related to a bona fide occupational qualification reasonably necessary to the normal operation of the employer's business or enterprise; or
> 2. To limit, segregate, or classify an employee in a way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of race, color, religion, sex, national origin, age, or handicap unless such action is related to a bona fide

> occupational qualification reasonably necessary to the normal operation of the employer's business or enterprise...." [Emphasis supplied].

47. 25 O.S.1981 § 1601. Its pertinent terms are:

> "It is a discriminatory practice for a person, or for two or more persons to conspire,
> (1) to retaliate or discriminate against a person because he has opposed a discriminatory practice, or because he has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act...."

48. The Oklahoma Human Rights Commission; *see supra* note 17.

49. Article 5., 25 O.S.1981 §§ 1501 *et seq.*

50. 25 O.S.Supp.1985 § 1501(3). Its terms are:

> "... the Human Rights Commission has the [power]: ...
> (3) to receive, investigate, seek to conciliate, hold hearings on, and pass upon complaints alleging violations of this act...."

*The EEOC rather than the Commission may process some charges.* This is so because the Commission has been designated a "706 Agency" under Title VII. 29 C.F.R. § 1601.70 and C.F.R. § 1601.74. The Commission qualifies for this status because (1) this state has laws that make unlawful employment practices based upon race, color, religion, sex or national origin and (2) the agency may seek or grant relief from those practices. 29 C.F.R. § 1601.70.

The EEOC is required by federal regulations to seek agreements with 706 Agencies to establish *effective and integrated resolution procedures.* 29 C.F.R. § 1601.13(c). The agreements may *provide that the EEOC, rather than the 706 Agency, shall process certain charges.* 29 C.F.R. § 1601.13(c).

A state agency's decision to waive its exclusive 60–day period for initial claim processing pur-

persuasion, it will issue a cease-and-desist order.[51] The Commission's affirmative action order may include hiring or reinstatement of employees as well as back pay.[52] The Commission may seek court enforcement of its orders.[53]

According to its text, the Act is to be construed liberally to further its general purposes.[54] Its stated purposes are to provide for implementation of the policies embodied in the federal Civil Rights Act of 1964, the federal Age Discrimination in Employment Act and Section 504 of the federal Rehabilitation Act of 1973.

■■■■■ Liberal construction is not a device for extending an enactment's ambit beyond its intended scope. Rather, the goal is to achieve an interpretation that harmonizes and coincides with the lawmakers' objective,[55] i.e., to follow the legislature's intent.[56] To ascertain legislative intent we look to the language of the pertinent statute.[57] Statutory words are to be given their ordinary sense except when a contrary intention plainly appears.[58]

■■■■■ The anti-discrimination statute provides that a person claiming to be aggrieved by a discriminatory practice *may* file with the Commission a written sworn complaint that will trigger the agency's administrative procedure. Whether this affords a mandatory remedy depends on the mean-

---

suant to a work-sharing agreement "terminates" agency proceedings, so that the EEOC may immediately take charge of the case and begin to process it. *E.E.O.C. v. Commercial Office Products Co.,* 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988).

**51.** 25 O.S.Supp.1985 § 1505(A) & (B). Its pertinent terms are:

"(A). If the Commission determines from a review of all of the evidence that the respondent has engaged in a discriminatory practice, the Commission shall state its findings of fact and conclusions of law and a member of the Commission ... or the staff shall endeavor to eliminate the discriminatory practice by conference, conciliation, and persuasion. * * *
(B). If the Commission is unable to eliminate the discriminatory practice by conference, conciliation, or persuasion, it shall issue an order requiring the respondent to cease and desist from the discriminatory practice and to take such affirmative action as in the judgment of the Commission will carry out the purposes of this act...."

**52.** 25 O.S.Supp.1985 § 1505(C). Its pertinent terms are:

"(C). Affirmative action ordered under subsection (b) of this section may include but is not limited to:
1. hiring or reinstatement of employees with or without back pay (less amount earned or earnable with reasonable diligence by such employees)...."

**53.** 25 O.S.Supp.1985 § 1506. Its pertinent terms are:

"(a) The Commission may petition for an order of the district court for enforcement of an order issued by the Commission under Section 1505 of this title, in a proceeding brought

in the district court of the county in which the alleged discriminatory practice which is the subject of the order occurs or in which a respondent resides or transacts business.
(b) The proceeding for an enforcement order shall be a review on the record without a jury and shall follow the procedures of the Administrative Procedures Act [75 O.S.1981 §§ 301 *et seq.*]...."

**54.** 25 O.S.1981 § 1101(b). Its terms provide:

"This act shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved."

**55.** Statutes that abrogate or derogate the common law are to be liberally construed as well. The terms of 25 O.S.1981 § 29 provide:

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice."
The terms of 12 O.S.1981 § 2 are virtually identical to those of 25 O.S.1981 § 29.

**56.** *National Union Fire Ins. Co. v. A.A.R.W. Skyways, Inc.* Okl., 784 P.2d 52, 57–58 (1989); *Hess v. Excise Bd. of McCurtain County,* Okl., 698 P.2d 930, 932 (1985); *Independent School Dist. No. 89 of Oklahoma County v. Oklahoma City Federation of Teachers, Local 2309 of American Federation of Teachers,* Okl., 612 P.2d 719, 721 (1980); *J.S. Bryan & Sons v. Vernor,* 172 Okl. 382, 45 P.2d 468, 470 (1935).

**57.** *Hess, supra* note 56 at 932.

**58.** 25 O.S.1981 § 1; *Hess, supra* note 56 at 932.

ing of the word "may." With few exceptions this court has held that *"may"* usually denotes *permissive* or *discretional* rather than *mandatory* action or conduct.[59] We think the legislature used the word "may" to convey its ordinary meaning and signify permissive rather than mandatory action.

*Before we can hold today that racial discrimination is redressible solely by Commission proceedings, we would have to accept as a given that the legislature had intended the Act to occupy not only the entire field of discrimination but also to cover the entire arena of employer/employee regulations.* That conclusion would be far from sound. Regulation of discrimination lies in *many* legal domains. Since the Act's purpose places it *in pari materia* with Title VII, which was not meant to be *the sole source of redress* for employment discrimination, a reasonable construction would be that the remedies provided by our Act are not exclusive.[60] There is nothing in the Act to indicate a legislative intent to even enter, much less completely occupy, the entire arena of legally regulated employer/employee relationship.

■■■■■■ When a statute is susceptible to more than one construction, it must be given that interpretation which frees it from constitutional doubt rather than one that would make it fraught with fundamental-law infirmities.[61] The Act here in contest does *not provide a private right of action to a person aggrieved by racially discriminatory practices if the Commission does not resolve the claim to his satisfaction.*[62] In contrast, it *does afford a private right of action for discrimination based on handicap.*[63] Were we today to construe the statute as having established the *sole* remedy for racially discriminatory practices, we would create a *dichotomous division of discrimination remedies* contrary to Art. 5 § 46 of the Oklahoma Constitution.[64] There would be a more generous remedy for victims of handicap discrimination than for those who suffered from racial discrimination. For remedial purpose, discrimination victims com-

---

**59.** *Hess, supra* note 56 at 932 n. 4. On the other hand, "shall" is usually given its common meaning of "must", implying a command or mandate. *Hess* at 932 n. 5. Rare exceptions are noted in *Hess* at 933 n. 6.

**60.** An act should be construed reasonably and sensibly. *Lancaster v. State,* Okl., 426 P.2d 714, 716 (1967); *Christian v. Shideler,* Okl. 382 P.2d 129 (1963).

**61.** *State v. Okl. State Bd. For Property,* Okl., 731 P.2d 394, 398–399 (1987); *Ricks Exploration Company v. Oklahoma Water Resources Board,* Okl. 695 P.2d 498, 504 (1985); *Neumann v. Tax Com'n.,* Okl., 596 P.2d 530, 532 (1979); *Wilson v. Foster,* Okl., 595 P.2d 1329, 1333 (1979).

**62.** Unlike the Oklahoma Act, *Title VII,* 42 U.S.C. § 2000e–5, *provides a private right of action.*

**63.** The terms of 25 O.S.1991 § 1901A. (effective Sept. 1, 1990) provide:

"If a charge of discrimination in employment on the basis of handicap is filed under the provisions of Sections 1101 through 1801 of Title 25 of the Oklahoma Statutes and is not resolved to the satisfaction of the charging party within one hundred and eighty (180) days from the filing of such charge, the *charging party may commence an action for redress against any person who is alleged to have discriminated against the charging party and against any person named as respondent in the charge, such action to be commenced in the district court of this state for the county in which the unlawful employment practice is alleged to have been committed."* [Emphasis supplied.]

This section provides for a *jury trial, nominal or actual damages,* including but not limited to, *reinstatement* or hiring, with or without *back pay,* or *any other legal or equitable relief the court may deem appropriate.* It also prescribes attorneys' fees for the prevailing party.

**64.** *The constitutional flaw we identify today is not the sole reason for making the Burk claim available to those who claim racial discrimination.* Even *without* the constitutional infirmity that might have come with the 1990 amendment's § 1901A.—which gave an expanded remedy to handicap discrimination victims alone— there is *ample basis for our conclusion that the Act was not intended as exclusive remedy for racial discrimination victims. See* our detailed discussion earlier in Section V.

prise a single class. Our Constitution absolutely interdicts the passage of special law that would sanction disparate remedies for those who complain of employment discrimination.[65]

 Interpreting the Act liberally, as we must, in furtherance of its general purposes, *we are not persuaded that common-law rights stand abrogated for workers who claim to have been discharged under the circumstances alleged by the plaintiff in this case.* Most importantly, we find no *textually demonstrable legisla-*

*tive intent to make the Title 25 remedies for racial discrimination exclusive.*[66] The growth of the common law in the area of master/servant relationship will not be stunned by legislative silence.[67] We find no obstacle to applying *Burk's* common-law tort to a racially motivated wrongful or retaliatory discharge.[68] In short, the employee who brings a common-law tort action for damages occasioned by either a racially motivated discharge or by one in retaliation for bringing a racial discrimination complaint[69] *states a state-law claim for tortious employment termination un-*

---

**65.** The terms of Art. 5 § 46, Okl. Const. provide in pertinent part:
> "The Legislature shall not, except as otherwise provided in this act, pass any local or special law authorizing:
>
> \* \* \* \* \* \*
>
> *Regulating the practice or jurisdiction of ... in judicial proceedings or inquiry before the courts ... or other tribunals...."* [Emphasis supplied.]
>
> See *Reynolds v. Porter,* Okl., 760 P.2d 816, 822 (1988); *Maule v. Independent School Dist. No. 9.,* Okl., 714 P.2d 198, 203–204 (1986).

**66.** For an example of another Oklahoma statute which *expresses exclusivity of the created remedy, see* Section 12 of the Workers' Compensation Act. The pertinent terms of 85 O.S.1981 § 12 are:
> "The liability prescribed ... shall be exclusive and in place of all other liability of the employer ... at common law or otherwise, for such injury, \* \* \*"

See also, e.g., the Governmental Tort Claims Act, 51 O.S.1981 § 153 B, whose terms are:
> "The liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise."

Another section of the tort claims act, 51 O.S.1981 § 170, also provides for *exclusivity,* supersedes all home rule charter provisions and special laws on the same subject, and repeals all conflicting acts.

**67.** *Brigance v. Velvet Dove, supra* note 39 at 303. We anticipate that at some point in their application, multiple sources of federal and state laws, when invoked together might precipitate a demand for excessive damages for a single harm. We are confident that when this should happen trial courts will be able to fashion appropriate devices to prevent more than maximum allowable recovery. *See supra* note 15.

**68.** We do not address here whether the current Act provides in 25 O.S.1991 § 1901 A. the *sole*

remedy for handicap discrimination. Neither do we decide whether other Oklahoma statutes which provide a variety of sanctions for various forms of retaliatory discharge are intended to be exclusive. *See, e.g.,* 40 O.S.1991 § 199 (misdemeanor for employer to discharge employee because employee filed a complaint with employer or the Commissioner of Labor with regard to hour and safety violations); 38 O.S.1991 §§ 34 and 35 (employer who discharges an employee for absence owing to the latter's grand jury service is civilly liable for actual and punitive damages and also punishable in a criminal misdemeanor prosecution); 44 O.S.1991 § 208 (employer subject to fine or imprisonment for employee's discharge because of the latter's military service); 85 O.S.1991 §§ 5–7 (workers' compensation retaliatory discharge provisions).

**69.** The plaintiff would, of course, have the burden to prove that a *significant reason* for his discharge was racial discrimination or retaliation for the exercise of his rights under Title VII. See *Thompson v. Medley Material Handling, Inc.,* Okl., 732 P.2d 461, 463 (1987), where we required the same standard of proof for retaliatory discharge in a statutory retaliation claim.

The California Supreme Court in *Gantt v. Sentry Ins.,* 1 Cal.4th 1083, 4 Cal.Rptr.2d 874, 885, 824 P.2d 680 (1992), recently held that a cause of action for tortious discharge in violation of public policy is neither preempted by the California Fair Employment and Housing Act nor by the Workers' Compensation Act. It stated:
> "The obligation to refrain from such conduct is a 'duty imposed by law upon all employers to implement the fundamental public policies' of the state; it cannot be bargained away; it is not preempted by other statutory remedies; and its breach is most assuredly not a 'normal' risk of the employment relationship subject to the exclusive remedy provisions of the Labor Code."

*der Burk.* We, of course, defer to the federal court to prevent the plaintiff's cumulative theories of liability *from resulting in more than one complete recovery.*[70]

CERTIFIED QUESTION ANSWERED.

HODGES, V.C.J., and ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

LAVENDER, SIMMS and HARGRAVE, JJ., dissent.

**70.** *See supra* notes 15 and 67.