Larry W. KATZER, Plaintiff–Appellant,

v.

BALDOR ELECTRIC COMPANY, Defendant–Appellee.

No. 91–5057.

United States Court of Appeals, Tenth Circuit.

July 13, 1992.

Richard H. Goldwyn of Goldwyn and Goldwyn, Tulsa, Okl., for plaintiff-appellant.

Clifford A. Godiner (Richard E. Jaudes with him, on the brief) of Peper, Martin,

Jensen, Maichel and Hetlage, St. Louis, Mo., for defendant-appellee.

Before EBEL and BARRETT, Circuit Judges, and PARKER,* District Judge.

BARRETT, Senior Circuit Judge.

Larry W. Katzer (Katzer), appeals from the order of the district court granting summary judgment in favor of defendant Baldor Electric Company (Baldor).

In 1982, Baldor purchased Nupar Manufacturing Company (Nupar), a small metal stamping plant. At the time of the purchase, Katzer had been employed with Nupar in the capacity of maintenance supervisor since April 5, 1976. Upon its acquisition of Nupar, Baldor retained Katzer in the supervisory position. As maintenance supervisor, Katzer was required to perform physical labor to repair various machinery. It is undisputed that Katzer was at all times an "at-will" employee in that there were no contractual restrictions on his employment termination, i.e., even an arbitrary discharge.

On February 19, 1988, Katzer filed a complaint with the Oklahoma Human Rights Commission (OHRC), claiming that he had been wrongfully terminated and discriminated against on the basis of his handicap, multiple sclerosis, on August 29, 1987. A Pre–Investigation Conference was held on June 2, 1988, and before the OHRC could complete its investigation, Katzer filed the present lawsuit on August 28, 1989. The relevant disputed facts may be briefly set forth.

Katzer asserts that he was first diagnosed as having "Suspected MS [multiple sclerosis]" in 1977, and that Nupar was aware of his condition at that time. Baldor, however, contends that it was not until about 1982 that Katzer informed it's general manager of his condition.

Baldor claims that Katzer's medical condition significantly deteriorated in the suc-

ceeding years, in that he became less steady on his feet, and his strength and dexterity waned. Baldor also contends that Katzer would occasionally fall while walking, and that he frequently used walls for support. Katzer argues that he was not criticized for his job performance, and that he consistently received merit pay increases. Katzer also contends that he only had two workers' compensation claims (both filed by Baldor), and he admits to only two falls during his employment at Baldor, both of which he claims were minor and several years apart.

Baldor alleges that they assigned both part-time and full-time assistants to Katzer to help him perform his job. Katzer, however, argues that he was assigned the assistants because of an increase in the work load. Baldor claims that due to Katzer's deteriorating medical condition, several of his co-workers had become increasingly concerned about his safety, and that because of the safety concern, Katzer was "removed" from Baldor's work force on August 29, 1987.[1] Katzer alleges that on that date Baldor terminated him without advance notice and without receiving any "medical" on him, and that the verbal termination occurred 15 minutes before he was scheduled to go on vacation.

Katzer further alleges that Baldor actively discouraged him from seeking other employment by calling his wife and telling her that,

if her husband went out and applied for a job he would be turned down and should be saved from the embarrassment; that [Baldor] would not consider hiring anyone in his condition and at his age; and that [Baldor] will not hire the handicap or keep them in their employ.

(Appellant's Brief, p. 10, summarizing Appendix, pp. A–376 to A–378).

Katzer filed the instant suit based on diversity jurisdiction under 28 U.S.C. § 1332(a) (1966). In his complaint, Katzer

---

* The Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

1. Baldor contends that Katzer was placed on medical leave on August 29, 1987, and told to

supply it with a report from his physician regarding what, if any, duties he could perform given his medical condition. Katzer, however, asserts that he was terminated on that date.

claimed that Baldor discriminated against him on the basis of his handicap. Katzer asserted: a claim in tort for wrongful discharge in contravention of 25 Okla.S.Ann. § 1302(A) (1987)[2]; a claim in tort for intentional infliction of emotional distress; and an implied cause of action pursuant to the Oklahoma Anti–Discrimination Act, 25 Okla.S.Ann. § 1505 (1992).

Baldor moved for summary judgment. Oral argument was held before United States Magistrate Jeffrey S. Wolfe on October 14, 1990. The district court adopted the magistrate's report and recommendation, and granted Baldor's motion for summary judgment in its entirety on March 6, 1991.

In its order granting summary judgment, the district court found that: (1) the public policy exception to the employment-at-will rule did not apply where administrative remedies already existed; (2) Katzer did not bring forth sufficient evidence of outrageous conduct to warrant a claim of intentional infliction of emotional distress; and (3) at the time the suit was filed, only the OHRC had the right to file a suit in district court. The district court also concluded that the amendment to the Anti–Discrimination Act which permitted a private right of action for handicap discrimination became effective September 1, 1990, and was not subject to retroactive effect. On appeal, Katzer contends that the district court erred in granting Baldor's motion for summary judgment as to each of his claims.

We hold that the district court erred in granting the motion for summary judgment on Baldor's claim that the public policy exception to the employment-at-will rule does not apply where administrative remedies already existed. Further, we hold that the district court erred in finding/concluding that Katzer has not sufficiently met the burden required to apply the public policy exception to the employment-at-will rule. We hold, however, that the district court

did not err in granting the motion for summary judgment regarding the claim of intentional infliction of emotional distress and the non-retroactivity of the amendment to the Anti–Discrimination Act.

■ In diversity cases, the federal court must apply the law of the forum state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Richards v. Platte Valley Bank,* 866 F.2d 1576 (10th Cir.1989). We review a summary judgment order de novo, applying the same standard used by the district court. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *Bishop v. Federal Intermediate Credit Bank,* 908 F.2d 658, 660 (10th Cir. 1990). On appeal, we examine the facts in the light most favorable to the party opposing summary judgment. *Anderson v. Department of Health & Human Services,* 907 F.2d 936, 947 (10th Cir.1990); *Bishop* at 660.

## I.

■ Katzer contends that the district court erred in granting Baldor's motion for summary judgment as to his asserted cause of action in tort based upon Oklahoma's public policy exception to at-will employment recognized in *Burk v. K–Mart Corp.,* 770 P.2d 24 (Okla.1989).

In *Burk,* the Oklahoma Supreme Court, while rejecting the argument that there is an implied obligation of good faith and fair dealing in the termination of any at-will employment, recognized a new cause of action in tort, carving a public policy exception to Oklahoma's employment at-will rule in a narrow class of cases:

> ... [T]he circumstances which present an actionable tort claim under Oklahoma law is where an employee is discharged for refusing to act in violation of an established and well-defined public policy

---

**2.** 25 Okla.S.Ann. § 1302(A) provides, *inter alia,* that it is a discriminatory practice for an employer to discharge or otherwise discriminate against an individual with respect to the terms, conditions, privileges or responsibilities of employment because of handicap unless such action is related to a bona fide occupational qualification reasonably necessary to the normal operation of the employer's business.

or for performing an act consistent with a clear and compelling public policy.

*Id.* at 29.

*Burk* observed that the court would be cautious in recognizing further public policy exceptions to the at-will doctrine in the absence of legislative or judicial expressions, specifically recognizing that the Oklahoma legislature had enacted various statutory exceptions to the at-will doctrine, including 25 Okla.S.Supp. 1985 §§ 1302, 1505(c)(1) declaring it a discriminatory practice for an employer to discharge an individual because of race, color, religion, sex, national origin, age, or handicap. *Id.* at 26, n. 4.

Prior to *Burk*, the Oklahoma Supreme Court, in *Hinson v. Cameron*, 742 P.2d 549, 552–53 (Okla.1987), while recognizing a claim for breach of implied contract under specified conditions, observed that various courts had held that public policy would be violated if an employee should be dismissed for:

> ... (a) refusing to participate in an illegal activity, (b) performing an important public obligation, (c) exercising a legal right or interest, (d) exposing some wrongdoing by the employer, and (e) performing an act that public policy would encourage or, for refusing to do something that public policy would condemn, when the discharge is coupled with a showing of bad faith, malice or retaliation.

In its order granting Baldor's motion for summary judgment, the district court concluded that "the *Burk* exception does not apply where administrative remedies already exist." (Appendix p. A–327). The administrative remedies alluded to by the district court were those available through the OHRC.

The Supreme Court of Oklahoma has recently held, *inter alia*, in *Tate v. Browning Ferris, Inc.*, 833 P.2d 1218 (1992), that an employee-plaintiff may state a tort cause of action pursuant to the public policy exception to the at-will employment rule even though there are administrative remedies available to the employee-plaintiff for the alleged discrimination. The Court indicated, however, that a tort action may not lie if the state has provided an alternative statutory remedy intended clearly to be exclusive. The *Tate* decision was not available to the district court when it granted summary judgment in this case.

In *Tate*, a black employee sued his employer under Title VII alleging both a racially discriminatory discharge *and* retaliation because he had filed a discrimination charge. He also pleaded a state law tort claim for wrongful discharge. The court rejected the contention that a person aggrieved by a discriminatory employment practice must exhaust administrative remedies under Oklahoma's anti-discrimination statute, 25 Okla.S. 1981 § 1101, *et seq.*, before seeking common law tort remedies. Furthermore, the Court declined the invitation to restrict *Burk* to classic "whistleblower" claims as urged by the employer, or to retaliatory discharge claims. *Burk* also refused to read the implied covenant of good faith into at-will employment, reasoning that the contractual relationship may not adequately protect society's interest in carrying out public policies. 770 P.2d at 28.

In addressing the certified question, the *Tate* court posed the issue in the disjunctive: "Are state-law remedies prescribed by Oklahoma's anti-discrimination statute ... exclusive for vindication of a racially motivated *or* retaliatory discharge?" (emphasis supplied), and then proceeded to answer the question in the negative. 833 P.2d at 1220. In expanding on its answer, the Court explained:

> As there can be no doubt at this point in time that racial discrimination in the workplace clearly contravenes the public policy declared by the Act, we give today a categorically affirmative answer to the question whether a racially motivated discharge *or* one in retaliation for filing a racial discrimination complaint offends a clear mandate of "public policy" that

comes within the protection of *Burk* (emphasis supplied).

*Id.* at 1225.

In the instant case, Katzer alleged a handicap motivated discriminatory discharge. We hold that such an allegation falls within the at-will exception under *Tate.*

## II.

■ Katzer contends that the district court erred in granting Baldor's motion for summary judgment as to his asserted cause of action in tort for intentional infliction of emotional distress.

In *Eddy v. Brown,* 715 P.2d 74 (Okla.1986), the Oklahoma Supreme Court recognized the existence of a claim for intentional infliction of emotional distress as an independent tort. The Court stated that the tort would be governed by the narrow standards of Restatement (Second) of Torts § 46 (1977), which provide in part,

(1) One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.... [and that such liability does not extend] to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Eddy* at pp. 76–77. See also, *Smith v. Farmers Co–Op. Ass'n of Butler,* 825 P.2d 1323, 1327 (Okla.1992); *Wilson v. Still,* 819 P.2d 714, 716 (Okla.1991); *Haynes v. South Com. Hosp. Mgmt., Inc.,* 793 P.2d 303, 306 (Okla.App.1990); *Breeden v. League Servs. Corp.,* 575 P.2d 1374, 1376 (Okla.1978) (a plaintiff must prove that defendant's extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to him).

*Eddy* directed that under Oklahoma law the trial court is given the initial responsibility:

... to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the ... standards [of a cause of action for intentional infliction of emotional distress]. Only when it is found that reasonable men would differ in an assessment of this critical issue may the tort-of-outrage claim be submitted to the jury.

715 P.2d at 76–77.

We have held that to establish a prima facie case of intentional infliction of emotional distress, a plaintiff must demonstrate:

(1) that the tortfeasor acted intentionally or recklessly; (2) that the tortfeasor's conduct was extreme and outrageous; (3) that plaintiff actually experienced emotional distress; and (4) that the emotional distress was severe." See *Pytlik v. Professional Resources Ltd.,* 887 F.2d 1371, 1379 (10th Cir.1989) (applying Oklahoma law).

*Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387 (10th Cir.1991).

After careful review, we find nothing in the record which indicates that Baldor behaved in such an extreme or outrageous manner toward Katzer as to impose liability for intentional infliction of emotional distress. In his deposition, Katzer answered negatively when questioned whether he believed Baldor's conduct to be outrageous or "beyond the bounds tolerable in a civilized community." (Appendix p. 41).

We hold that Katzer did not sufficiently establish conduct so extreme or outrageous as to impose liability on Baldor under the narrow Restatement Second rule adopted by the Oklahoma courts. Nor did Katzer establish a prima facie case of intentional infliction of emotional distress under the requirements we set forth in *Daemi.* Therefore, we hold that the district court did not err in granting Baldor's motion for summary judgment as to Katzer's asserted cause of action in tort for intentional infliction of emotional distress.

## III.

Katzer contends that the district court erred in granting Baldor's motion for summary judgment as to his asserted cause of action under the Oklahoma Anti–Discrimi-

nation Act for pack pay, reinstatement and a reasonable attorney fee.

Under the Oklahoma Anti–Discrimination Act, Okla.Stat.Ann. tit. 25, § 1502(a),

a person claiming to be aggrieved by a discriminatory practice, ... may file with the [OHRC] a written sworn complaint stating that a discriminatory practice has been committed, ... The [OHRC] ... shall promptly investigate the allegations of discriminatory practice set forth in the complaint.

The Act authorizes the OHRC to issue an order requiring a party to cease and desist from its discriminatory practices if appropriate, and to petition the district court for an order for enforcement. *See*, Okla. Stat.Ann. tit. 25, §§ 1505 and 1506.

 The Act did not create a private cause of action until a new section was adopted on September 1, 1990. The new section, Okla.Stat.Ann. tit. 25 § 1901, specifically created a private cause of action for a party alleging handicap discrimination. Katzer argues that this new section is entitled to retroactive status, thus creating a viable private cause of action. We have reviewed the section. Nothing therein addresses the issue of retroactivity.

The Oklahoma courts have held that "as a general rule, a statute or its amendment will have only prospective effect unless it clearly provides otherwise." *Alldredge v. Firefighters Pen. & Ret. Bd.*, 816 P.2d 580, 582 (Okla.App.1991) (quoting *Hammons v. Muskogee Medical Center Authority*, 697 P.2d 539, 540 (Okla.1985)); *Wilson v. State ex rel. Oklahoma Tax Commission*, 594 P.2d 1210 (Okla.1979) (in case of doubt, doubt must be resolved against retrospective effect); *Benson v. Blair*, 515 P.2d 1363 (Okla.1973) (statutes should be given prospective operation only, unless contrary legislative intent is expressed clearly or necessarily implied from language used). Thus, we hold that § 1901 of the Act is not entitled to retroactive status.

We REVERSE the district court's order granting Baldor's motion for summary judgment on Katzer's common-law tort claim that Baldor discriminated against him by terminating his employment on the ba-

sis of his handicap. We AFFIRM the district court's ruling that Katzer has failed to state a claim in tort for intentional infliction of emotional distress and that there is no private right of action available to Katzer pursuant to the Oklahoma Anti–Discrimination Act. We REMAND with directions to permit Katzer to establish his claim of wrongful discharge on the basis of his handicap.